888 A.2d 284

**Ebrahim NASSERI**

v.

**GEICO GENERAL INSURANCE COMPANY.**

No. 60, Sept. Term, 2003.

Court of Appeals of Maryland.

Dec. 15, 2005.

Mark Kotlarsky, Potomac, for petitioner.

Francis J. Ford (Ford & Chervenak, Rockville, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

ELDRIDGE, J.

We issued a writ of certiorari in this case for the purpose of resolving two important coverage issues under the Motor Vehicle Insurance subtitle of the Insurance Code, Maryland Code (1996, 2002 Repl.Vol., 2005 Supp.), §§ 19–501 through 19–516 of the Insurance Article.

The first issue arises because, *inter alia*, § 19–501(b)(2)(ii) of the Insurance Code excludes a "taxicab" from the definition of "motor vehicle." [1] The petitioner Ebrahim Nasseri drives a taxicab and is also the owner of a personal motor vehicle insured by the respondent GEICO General Insurance Company. The question presented by this case is whether the driver of a taxicab, who is injured in a collision between the taxicab and a motor vehicle which is neither a taxicab nor a bus, has personal injury protection (PIP) coverage, under his personal motor vehicle insurance policy, for the injuries suffered in the collision.

The second question presented by this case concerns the validity, under the Insurance Code, of a PIP exclusion in the GEICO insurance policy covering the petitioner's personal motor vehicle. The PIP section of the policy provides that the insured is "not covered if injured while in, or through being struck by, any motor vehicle which is not an insured auto if it is . . . available for the regular use of" the insured.[2]

---

1. Section 19–501 states as follows:
   " § **19–501.** **Definitions.**
   (a) *In general.*—In this subtitle the following words have the meanings indicated.
   (b) *Motor vehicle.*—(1) 'Motor vehicle' means a vehicle, including a trailer, that is operated or designed for operation on a public road by any power other than animal or muscular power.
   (2) 'Motor vehicle' does not include:
   (i) a bus as defined in § 11–105 of the Transportation Article; or
   (ii) a taxicab as defined in § 11–165 of the Transportation Article.
   (c) (1) 'Motor vehicle accident' means an occurrence involving a motor vehicle that results in damage to property or injury to a person.
   (2) 'Motor vehicle accident' does not include an occurrence that is caused intentionally by or at the direction of the insured.
   (d) 'Named insured' means the person denominated in the declarations in a motor vehicle liability insurance policy."

2. The same exclusion in the GEICO insurance policy also applies to "an . . . auto if it is owned by you or a relative. . . . " The entire PIP exclusion is as follows:
   "*You* and *your relatives* are not covered if injured while in, or through being struck by, any *motor vehicle* which is not an *insured auto* if it is owned by *you* or a *relative* or available for the regular use of either."

## I.

The facts of this case are undisputed, and to a large extent they were set forth in a stipulation filed in the Circuit Court for Montgomery County. The accident giving rise to this litigation occurred on May 15, 2001. The petitioner Ebrahim Nasseri was driving a taxicab that collided with a motor vehicle which was neither a taxicab nor a bus. Nasseri's taxicab was available to him under an agreement entered into between the owner of the taxicab, Action Taxicab, Inc., and Nasseri. That agreement required Nasseri to pay Action $95.00 per day in exchange for the use of the taxicab. The agreement further restricted his use of the taxicab to twelve hours within any twenty-four hour period. At the time of the accident, the taxicab was covered only by liability insurance, in accordance with the minimum requirements of Maryland law applicable to taxicabs. Nasseri, however, maintained a separate policy of motor vehicle insurance through GEICO General Insurance Company for his personal motor vehicle. That policy provided for PIP coverage in the event of personal injury resulting from a "motor vehicle accident." It is the coverage under Nasseri's policy with GEICO that is at issue in this case.

Following the accident, Nasseri submitted a claim for PIP benefits to GEICO under his personal motor vehicle insurance policy in the amount of $2,500.00, the limit under that policy. GEICO responded by denying PIP coverage for alternative reasons. First, GEICO stated that, under § 19–501(b)(2)(ii) of the Insurance Article, taxicabs are specifically exempt from the definition of "motor vehicle," and that, therefore, Nasseri was not injured in a "motor vehicle accident" within the meaning of the PIP statute, § 19–505 of the Insurance Article.[3] Next, GEICO asserted that, under the insurance policy,

---

This case does not present any issue with regard to being in or struck by an "owned" vehicle.

3. Section 19–505(a) of the Insurance Article, setting forth the basic required PIP coverage, provides as follows:

" **§ 19–505. Personal injury protection coverage—In general.**

there is no PIP coverage for uninsured vehicles which are available for the "regular use" of the insured.[4]

Nasseri then filed a small claim action for damages in the District Court of Maryland, sitting in Montgomery County, against GEICO. He claimed that, under the insurance policy on his personal motor vehicle and the pertinent statutory provisions, he was entitled to PIP benefits for the injuries suffered in the collision. The District Court held that he was not entitled to PIP benefits because of the exclusion of taxi-cabs from the statutory definition of "motor vehicle." The District Court, therefore, rendered judgment for GEICO. On a *de novo* appeal to the Circuit Court for Montgomery County, the Circuit Court also entered judgment for GEICO, although on the ground that the "regular use" exclusion in the GEICO policy was applicable and valid.

Nasseri filed in this Court a petition for a writ of certiorari, presenting the issues of whether § 19–505 of the Insurance Article requires GEICO to provide PIP coverage under the

(a) *Coverage required.*—Unless waived in accordance with § 19–506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:

(1) except for individuals specifically excluded under § 27–606 of this article:

(i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained; and

(ii) any other individual who is injured in a motor vehicle accident while using the insured motor vehicle with the express or implied permission of the named insured;

(2) an individual who is injured in a motor vehicle accident while occupying the insured motor vehicle as a guest or passenger; and

(3) an individual who is injured in a motor vehicle accident that involves the insured motor vehicle:

(i) as a pedestrian; or

(ii) while in, on, or alighting from a vehicle that is operated by animal or muscular power."

4. GEICO gave a third reason for denying coverage, but the insurer later abandoned that reason.

circumstances here and whether the "regular use" exclusion contained in the insurance policy is invalid under the statute. We granted the petition, *Nasseri v. Geico,* 377 Md. 111, 832 A.2d 204 (2003), and we shall reverse.

## II.

■ GEICO's argument, that the driver of a taxicab is not entitled to PIP benefits under the driver's personal motor vehicle insurance policy, is based entirely upon the definitions of "motor vehicle" and "motor vehicle accident" in § 19–501(b)(2)(ii) and (c)(1) of the Insurance Article. The essence of GEICO's argument is as follows (respondent's brief at 5–6):

"By statutory definition, § 19–501, 'motor vehicle' does not include 'a taxicab.' "

\*      \*      \*

"Furthermore, inasmuch as the statute provides that 'motor vehicle accident' means an occurrence involving a 'motor vehicle,' the policy language referring to motor vehicle accidents must be read as requiring a motor vehicle accident *which does not involve* a 'taxicab.' " (Emphasis in original).

A principal flaw in GEICO's argument is that § 19–501(c)(1) of the Insurance Article does *not* define "motor vehicle accident" as an "accident which does not involve a taxicab." Instead, the statute defines "motor vehicle accident" as "an occurrence involving *a motor vehicle* that results in damage to property or injury to a person." (Emphasis supplied). The occurrence in the present case clearly involved "a motor vehicle," namely the other vehicle with which Nasseri's taxicab collided.

For purposes of this case, we shall assume *arguendo* that the statutory phrase "motor vehicle accident" in subsection (c)(1) incorporates the taxicab exclusion in subsection (b)(2)(ii), and that an accident between two taxicabs might not be a "motor vehicle accident" within the meaning of subsection (c)(1). Nevertheless, as long as another motor vehicle, which is not a taxicab or bus, is involved in the accident, such accident plainly comes within the definition of "motor vehicle

accident" in subsection (c)(1). The subsection requires only the involvement of one motor vehicle for there to be a motor vehicle accident; it does not require that all vehicles involved in the collision be "motor vehicles."

Moreover, the pertinent language of § 19–505 of the Insurance Article, setting forth the basic PIP coverage, encompasses in subsection (a)(1)(i) an insured

"who is injured in *any* motor vehicle accident, including an accident that *involves an uninsured motor vehicle....*" (Emphasis supplied).

Again, assuming *arguendo* that a person injured in a collision between two taxicabs might not be injured in "any motor vehicle accident" within the meaning of the § 19–505, Nasseri was injured in an accident involving his taxicab and a motor vehicle which was neither a taxicab nor a bus. .Nasseri was certainly injured in a motor vehicle accident under the language of the statute, and § 19–505 provides PIP coverage for anyone injured in *any* motor vehicle accident.

The applicability of § 19–505, under the circumstances of this case, is reinforced by the language of § 19–513(d)(1)(i) of the Insurance Article. Section 19–513(d)(1)(i) states:

"—(1) The insurer under a policy that contains the coverages described in §§ 19–505 and 19–509 of this subtitle shall pay the benefits described in §§ 19–505 and 19–509 to an individual insured under the policy who is injured in a motor vehicle accident:

(i) while occupying a motor vehicle for which the coverages described in §§ 19–505 and 19–509 of this subtitle are not in effect...."

It would appear that the above-quoted language was directly aimed at circumstances like those presented here. The vehicles "for which the coverages described in §§ 19–505 and 19–509" would legally not be "in effect" are taxicabs, buses, vehicles owned by the State of Maryland,[5] and vehicles for which the first named insured has made "an affirmative

---

5. *See Nationwide v. USF & G,* 314 Md. 131, 550 A.2d 69 (1988).

written waiver of [PIP] benefits."[6]   In this case, Nasseri had an insurance policy providing PIP benefits, and he was occupying a motor vehicle for which PIP benefits were not in effect.   A holding that he was not entitled to PIP benefits, precisely because he was occupying a vehicle for which PIP benefits were not in effect, could not be reconciled with § 19–513(d)(1)(i).

The legislative enactment which deleted taxicabs from the definition of "motor vehicle" for purposes of certain coverages mandated by the Insurance Code was Ch. 655 of the Acts of 1977.   The title to Ch. 655 shows that the exemption for taxicabs was not as sweeping as GEICO argues in the case at bar.[7]   The title of Ch. 655 reads as follows:

"FOR the purpose of exempting certain vehicles, as defined in the Vehicle Laws, from certain required primary coverage insurance provisions;  and subdividing a section."

Consequently, the purpose of Ch. 655 was simply to provide that the compulsory automobile liability insurance policies on taxicabs and certain other vehicles did not have to contain

---

6.  *See* § 19–506 of the Insurance Article.

7.  In *Moore v. State,* 388 Md. 623, 882 A.2d 256 (2005), this Court recently underscored the value of the title in determining the General Assembly's intent.   We stated in *Moore,* 388 Md. at 635, 882 A.2d at 263:

   "In numerous cases, this Court has held that the title of an enactment is an important indication of the General Assembly's intent.   *See, e.g., Mayor & Council of Rockville v. Rylyns,* 372 Md. 514, 555, 814 A.2d 469, 493 (2002) ('It is "well settled" that "the title of an act is relevant to ascertainment of its intent and purpose," ' quoting *MTA v. Balto. Co. Revenue Authority,* 267 Md. 687, 695–696, 298 A.2d 413, 418 (1973)); *Board v. Stephans,* 286 Md. 384, 395, 408 A.2d 1017, 1022 (1979) (The purpose of the title 'is to inform the members of the General Assembly and the public of the nature of the proposed legislation'); *State Farm v. Ins. Comm'r,* 283 Md. 663, 674 n. 3, 392 A.2d 1114, 1120 n. 3 (1978) ('The title of an act is relevant in ascertaining the legislative intent and purpose'); *Bd. of Co. Comm's v. Colgan,* 274 Md. 193, 200, 334 A.2d 89, 93 (1975) ('Further evidence that this section does not [support appellant's position] is made clear by its title'); *City of Gaithersburg v. Mont. Co.,* 271 Md. 505, 513, 318 A.2d 509, 513 (1974) ('This legislative intent, disclosed by the title of Chapter 116, confirms the scope of the language of the Act itself')."

policy provisions for PIP and some other statutory coverages. The purpose was not to negate required PIP and other required coverages, under policies on all other types of motor vehicles, whenever a taxicab happened to be involved in an accident with another type of motor vehicle.

■ The language of the Insurance Article, as well as numerous opinions by this Court, make it clear that an insured, who has PIP coverage under a policy on the insured's motor vehicle, and who is injured in an accident while occupying a different motor vehicle owned by someone else, is ordinarily entitled to PIP coverage under the policy on the insured's vehicle. If the vehicle occupied by the insured also has PIP coverage, that coverage will be primary and the coverage under the policy on the insured's vehicle will be secondary. If the occupied vehicle has no PIP coverage, the coverage under the insured's policy will be primary. *See, e.g., Bishop v. State Farm Mutual Auto Insurance,* 360 Md. 225, 236–238, 757 A.2d 783 (2000); *MAIF v. Perry,* 356 Md. 668, 671–672, 676–677, 741 A.2d 1114, 1115–1116, 1118–1119 (1999); *Travelers Ins. Co. v. Benton,* 278 Md. 542, 543, 365 A.2d 1000, 1002 (1976) (The statute "provides, with respect to a person insured under a policy providing PIP coverage who is injured in an accident while occupying a motor vehicle for which such coverage is not in effect, that the PIP benefits shall be payable by the injured party's insurer providing such coverage") (internal quotation marks omitted). *See also Pennsylvania Nat'l Mutual Casualty Insurance Company v. Gartelman,* 288 Md. 151, 154–157, 416 A.2d 734, 736–739 (1980).

Therefore, under the circumstances of this case, the fact that Nasseri was driving a taxicab furnished no valid basis for denying him PIP benefits required by the Insurance Code.[8]

---

8. The petitioner, relying on the principle that an insurer can normally provide greater coverage than that required by statute (*see, e.g., Bishop v. State Farm Mutual Auto Insurance,* 360 Md. 225, 230, 757 A.2d 783, 785 (2000), involving greater PIP coverage), alternatively argues that the GEICO policy provides him with PIP coverage regardless of the statutory requirements. In light of our holding that the statute requires

### III.

■ GEICO's alternative argument is based on the exclusion, in the PIP section of the insurance policy on Nasseri's personal vehicle, that the insured is "not covered if injured while in, or being struck by, any motor vehicle which is not an insured auto if it is . . . available for the regular use of" the insured.

Section 19–505(c) of the Insurance Article specifies the permissible exclusions from required PIP coverage. That subsection reads as follows:

"(c) *Exclusions.*—(1) An insurer may exclude from the coverage described in this section benefits for:

(i) an individual, otherwise insured under the policy, who:

1. intentionally causes the motor vehicle accident resulting in the injury for which benefits are claimed;

2. is a nonresident of the State and is injured as a pedestrian in a motor vehicle accident that occurs outside of the State;

3. is injured in a motor vehicle accident while operating or voluntarily riding in a motor vehicle that the individual knows is stolen; or

4. is injured in a motor vehicle accident while committing a felony or while violating § 21–904 of the Transportation Article; or

(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

1. the named insured; or

2. an immediate family member of the named insured who resides in the named insured's household.

(2) In the case of motorcycles, an insurer may:

---

PIP coverage under the circumstances here, we need not reach petitioner's alternative argument.

(i) exclude the economic loss benefits described in this section; or

(ii) offer the economic loss benefits with deductibles, options, or specific exclusions."

The "regular use" exclusion in Nasseri's insurance policy is not one of the permissible exclusions set forth in the above-quoted statutory language.

While GEICO acknowledges that the "regular use" exclusion goes beyond the permissible exclusions set forth in the Insurance Code,[9] GEICO argues that we should uphold the exclusion "as applied to the facts of this case—where the vehicle 'available for the regular use' of Nasseri is a taxicab." (Respondent's brief at 9). Nevertheless, " 'this Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized.' " *Stearman v. State Farm Mutual Automobile Insurance Company,* 381 Md. 436, 445–446, 849 A.2d 539, 545 (2004), quoting *West American Insurance Co. v. Popa,* 352 Md. 455, 475, 723 A.2d 1, 10 (1998). For a recent comprehensive review of numerous circumstances in which this principle has been applied, *see* Judge Harrell's opinion for the Court in *Salamon v. Progressive Classic Insurance Company,* 379 Md. 301, 311–315, 841 A.2d 858, 864–867 (2004). *See also, e.g., Lewis v. Allstate Ins. Co.,* 368 Md. 44, 48, 792 A.2d 272, 274 (2002) ("In light of the comprehensive nature of the statutory provisions regulating motor vehicle insurance, and the various limitations, conditions, exceptions and exclusions expressly authorized by the Legislature, this Court has consistently 'held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not authorized by the Legislature,' " quoting *Van Horn v. Atlantic Mutual,* 334 Md. 669, 686, 641 A.2d 195, 203 (1994)); *Dutta v. State Farm,* 363 Md. 540, 552–553, 769 A.2d 948, 955 (2001); *Staab v. American*

---

9. GEICO states in its brief as follows (respondent's brief at 9): "Appellee [respondent] recognizes that its exclusion of a non-insured auto 'available for the regular use of' the insured is broader than the specific exclusions set forth in § 19–505(c)."

*Motorists,* 345 Md. 428, 436, 693 A.2d 340, 344 (1997); *Enterprise v. Allstate,* 341 Md. 541, 547, 671 A.2d 509, 512 (1996) ("Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute").

It would be flatly inconsistent with the above-cited decisions, as well as numerous other opinions by this Court, to accept GEICO's argument and uphold the unauthorized "regular use" exclusion "where the vehicle 'available for the regular use' . . . is a taxicab." Furthermore, other than the argument which we have rejected in Part II of this opinion, GEICO suggests no basis for upholding the "regular use" exclusion with respect to taxicabs but invalidating the exclusion with respect to other types of vehicles.

There is another compelling reason for rejecting GEICO's argument. Upholding the "regular use" exclusion would be flatly inconsistent with this Court's decision in *Pennsylvania Nat'l Mutual Casualty Insurance Company v. Gartelman, supra,* 288 Md. 151, 416 A.2d 734, and with the General Assembly's response to the *Gartelman* opinion.

As previously noted, *supra,* n. 2, the entire exclusion in the GEICO insurance policy excludes PIP coverage if the insured or "relatives" of the insured are "injured while in, or through being struck by, any motor vehicle which is not an insured auto if it is owned by you [the insured] or a relative or available for the regular use of either." *Pennsylvania Nat'l Mutual Casualty Company v. Gartelman,* involved the validity, under the Insurance Code, of two similar exclusions, one applicable to PIP coverage and one applicable to uninsured motorist coverage. The PIP exclusion in the *Gartelman* case provided as follows: [10]

"MARYLAND PERSONAL INJURY PROTECTION
ENDORSEMENT"
\*    \*    \*

---

10. *See* Briefs and Record in No. 102, September Term 1979, Joint Record Extract at E. 12.

"Exclusions

This insurance does not apply:

\*       \*       \*

"(c) to bodily injury sustained by the named insured or any relative while occupying, or while a pedestrian through being struck by any motor vehicle owned by the named insured or furnished or available for the named insured's regular use and which is not an insured motor vehicle."

This Court in *Gartelman* held that both the PIP exclusion and the uninsured motorist exclusion were invalid. Although the facts of *Gartelman* presented an issue concerning the "owned" rather than the "available for regular use" aspect of the PIP exclusion, the Court's reasoning would clearly apply to both aspects. The Court stated (288 Md. at 156–157, 416 A.2d at 737):

"[The statute] expressly provides for only four exclusions from the required PIP coverage. It does not expressly provide an exclusion for an insured occupying an uninsured motor vehicle owned by a named insured. We decline to insert such an exclusion which would be contrary to the remedial legislative purpose of assuring compensation for damages to victims of motor vehicle accidents without regard to fault.

"The insurance policy in this case, because it provides an exclusion for an insured occupying an uninsured motor vehicle owned by a named insured, denies PIP coverage to a class of persons who are required by § 539 [now § 19–505] to be covered. The policy's exclusion, therefore, conflicts with the statute and is invalid. Accordingly, the claimant is entitled to coverage under the policy's PIP provision."

Apparently in response to *Gartelman,* the General Assembly enacted Ch. 573 of the Acts of 1982, which is currently codified as § 19–505(c)(1)(ii) of the Insurance Article.[11]  Sec-

---

11. The Department of Legislative Reference's bill file on Senate Bill 983, which became Ch. 573 of the Acts of 1982, contains correspon-

tion 19–505(c)(1)(ii) allows an insurer to exclude from PIP coverage

"(ii) The named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

1. the named insured; or

2. an immediate family member of the named insured who resides in the named insured's household."

The permissible exclusion is much narrower than the exclusion contained in the insurance policy involved in *Gartelman* and in the GEICO policy involved in the present case. The exclusion permitted by the statute does not extend broadly to "relatives" of the named insured but is limited to the named insured's immediate family residing in the same household. More significantly for the case at bar, the permissible exclusion is limited to uninsured vehicles "owned" by the insured and does not encompass uninsured vehicles available for regular use of the insured. If we were to accept GEICO's argument and uphold the "regular use" exclusion, we would be amending and extending Ch. 573 of the Acts of 1982. This would clearly be inappropriate.[12]

The "regular use" exclusion relied on by GEICO is not authorized by the Insurance Article of the Maryland Code and, therefore, is invalid.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED AND CASE REMANDED*

---

dence from the insurance industry supporting the bill, a fiscal note, and marked-up copies of the *Gartelman* opinion.

**12.** GEICO also relies on *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 357 A.2d 350 (1976), which involved an insurance policy coverage clause, applicable to liability insurance, which was worded somewhat like the exclusion relied upon by GEICO in the present case. The only issue in *Winterwerp*, however, was the interpretation of the clause and whether it was ambiguous. The case did not involve any issue concerning the clause's validity or the Insurance Code. In fact, neither the majority nor the minority opinions in *Winterwerp* even cited the Maryland Insurance Code or any other statute.

*TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.   RESPONDENT TO PAY COSTS.*