Dissenting Opinion by
McDonald, J.,
which Barbera, C.J., and Greene, J., join.
Much of the Majority opinion consists of background information and detailed descriptions of cases with which I have no quarrel. My disagreement is with the Majority opinion’s conclusion that a properly insured taxicab is an “uninsured” vehicle for purposes of the personal injury protection (“PIP”) statute—Maryland Code, Insurance Article (“IN”), § 19-505.[1] That conclusion is not only contrary to the plain language of the statute and its legislative history, but also inconsistent with our most recent decision on PIP coverage and the construction of the statute by the agency charged with administering it.
*369 As the Majority Opinion recounts, Alhassan Bundu-Conteh entered into an insurance contract with State Farm for his personal motor vehicle under which part of the premium he paid was for PIP coverage. He also owned a car that he used for his taxicab business, which he insured with another company that insures taxicabs. Consistent with Maryland law, that insurer did not provide PIP coverage in its policy. (There is no dispute that taxicabs are excluded from the State law concerning PIP coverage—that is, automobile insurers are not required to offer PIP coverage for taxicabs—and there is no indication in the record that they do.)
As the Majority opinion indicates, it is often said that PIP coverage follows the person—ie., the insured. Majority op. at 339-40,152 A.3d at 804-05. It is thus undisputed that, if Mr. Bundu-Conteh were walking down the street and hit by a car, he would receive PIP benefits under the policy. If he were riding a bicycle and were involved in a motor vehicle accident, he would be covered. If he were a passenger in a taxicab when it collided with another car, he would be covered. If he were driving a taxicab owned by someone else, he would be covered.[2]
State Farm argues, and the Majority opinion apparently agrees, that PIP coverage does not follow Mr. Bundu-Conteh if he is in an accident while driving a taxicab that he owns and that he has fully insured in accordance with the requirements of State law. The Maryland Insurance Administration (“MIA”), which administers the State Insurance Law, rejected such an incongruous interpretation. So should we.

PIP Coverage

As the Majority opinion recounts, beginning in 1972, State law required PIP coverage as part of motor vehicle insurance to cover economic losses resulting from automobile accidents. As the Majority opinion also notes, this requirement was indisputably remedial legislation. See Majority op. at 336-38, 357-58, 152 A.3d at 802-03, 815. PIP coverage was part of the *370 no-fault automobile insurance reforms that were adopted in a number of states during the 1970s and 1980s. It was intended to compensate victims of automobile accidents for economic damages more quickly and efficiently, with lower administrative costs and without regard to fault. See generally J.M. Anderson, P. Heaton, & S. J. Carroll, The U.S. Experience with No-Fault Automobile Insurance: A Retrospective (Rand Corporation 2010).
“PIP is a pure social risk-allocating mechanism. By mandating PIP, the State has made a public policy decision to provide monetary relief to nearly every victim of a motor vehicle accident occurring in Maryland. Mandatory PIP shifts the risk of caring for these victims from the State to the private sector.” A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011) § 9.1 at 497.
Pertinent to this case, while Maryland law requires PIP coverage on most vehicle policies, it does not require PIP coverage in policies covering taxicabs or buses. IN § 19-501(b).[3] According to the record in this case, the insurer of Mr. Bundu-Conteh did not offer PIP coverage and there is no indication in the record that such coverage is available in Maryland from any insurer.

The Statutory Authorization for an “Owned but Uninsured” Exclusion

When an insured has PIP coverage through a policy, the insurer must pay PIP benefits whenever the insured is in *371 volved in a “motor vehicle accident” unless the law provides for an exclusion and the insured’s policy includes that exclusion. IN § 19-505(e). The exclusion at issue in this case appears in IN § 19-505(c)(l)(ii)l. That provision allows an insurer to have certain exclusions from PIP coverage, including an exclusion for “an injury that occurs while the named insured ... is occupying an uninsured motor vehicle owned by ... the named insured.... ”

What the “Oimed hut Uninsured” Exclusion Means

In denying PIP coverage to Mr. Bundu-Conteh, State Farm relied on an exclusion in its policy that it traces to the authorization for an “owned but uninsured” exclusion in IN § 19—505(c)(l)(ii). On its face, the statutory provision does not apply to this case. Mr. Bundu-Conteh was not occupying an “uninsured” motor vehicle. The taxicab was insured—indeed, it is undisputed that the vehicle had all the insurance coverage required by State law for taxicabs, although that coverage does not include PIP coverage. (Indeed, the record indicates that the insurance company that provided the policy for Mr. Bundu-Conteh’s taxicab does not even offer PIP coverage). State Farm’s argument that its denial of coverage is justified by this provision requires one to rewrite the statute—ie., that the exclusion extends to “an injury that occurs while the named insured ... is occupying an-u-ninsured a motor vehicle that, even if insured by another policy, lacks PIP coverage and that is owned by ... the named insured....”
If the statute were rewritten in that manner, it would be quite at odds with the other exclusions in the statute. Other than an exclusion for a non-resident pedestrian involved in an accident outside Maryland,[4] the other exclusions all are designed to deny benefits to a person involved in some kind of wrongdoing. In particular, the other exclusions are for (1) a person who intentionally causes the accident,[5] (2) a person *372 operating a vehicle he knows is stolen,[6] and (3) a person committing a felony or attempting to elude the police at the time of the accident.[7] In this context, it is evident that the exclusion for an accident involving an “owned but uninsured” vehicle is meant to allow insurers to deny benefits to those who fail to comply with the compulsory automobile insurance requirement.[8]
The Majority opinion suggests that the exclusion is meant to prevent one who owns multiple automobiles from waiving PIP coverage on all but one of the vehicles and then collecting PIP benefits if the individual happened to be in an accident in one of the cars for which he had waived PIP coverage.[9] See *373 Majority op. at 333-84, 345-51, 366-67, 152 A.3d at 801, 808-11, 821. However, the statute already eliminates that possibility. As the Majority opinion notes elsewhere, under IN § 19-506(b), a waiver of PIP coverage for one vehicle means that the insured forgoes PIP benefits anywhere. See Majority op. at 338-39, 152 A.3d at 803-04. But that is not this case. Mr. Bundu-Conteh did not waive PIP coverage in his State Farm policy. Nor did he waive PIP coverage for his taxicab; under State law, the insurer did not offer it to him and was not required to do so.
The legislative history of the statute confirms this understanding of the statute. Authorization for an “owned but uninsured” exclusion was added to the statute by the Legislature in 1982. Chapter 573, Laws of Maryland 1982. That bill was evidently a response to this Court’s decision in Pennsylvania Nat. Mut. Gas. Ins. Co. v. Gartelman, 288 Md. 151, 416 A.2d 734 (1980), in which the claimant sought PIP benefits under her husband’s automobile policy after she was injured while occupying a vehicle (a moped) that had no insurance at all. This Court held that, in the absence of legislative authorization, an insurer could not deny PIP benefits to one who was insured under a policy including such benefits, but who was injured while operating an uninsured vehicle.[10]
*374 The legislative file contains copies of the Gartelman decision; it also contains a copy of a floor report, which notes that the bill was “in response to” that decision. As indicated above, the Gartelman decision involved a situation in which the injured party was operating a vehicle without any insurance,[11] It is also notable that, in the synopsis of the bill that appears in the floor report, the only definition of “uninsured vehicle” in the synopsis refers to a “vehicle whose coverage is less than the coverage required to be provided by law.” (emphasis added).
Thus, neither the plain language of IN § 19-505(c)(l)(ii) nor its legislative history supports a. denial of PIP coverage to an insured who also owns and operates a properly insured taxicab. As this Court has stated on numerous occasions: “Where statutory language is plain and unambiguous, and expresses a definite meaning consonant with the statute’s purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning.”[12] Moreover, given the remedial purpose of the statutory requirement of PIP coverage, the statute should be construed liberally to promote its purpose.[13]
Given the plain language of the statute and its legislative history, it is perhaps unsurprising that the agency charged with administering the State insurance law agrees with this interpretation. As the Majority opinion notes, the Insurance Commissioner concluded that the authorization for an “owned but uninsured” exclusion in IN § 19-505(c)(l)(ii) refers to a motor vehicle without any insurance. Majority op. at 332-33, *375 152 A.3d at 800-01. The MIA’s construction of the statute is entitled to considerable weight. Crofton Convalescent Center, Inc. v. DHMH, 413 Md. 201, 215, 991 A.2d 1257 (2010); Maryland Aviation Administration v. Noland, 386 Md. 556, 572, 873 A.2d 1145 (2005); Maryland Insurance Commissioner v. Kaplan, 434 Md. 280, 298, 75 A.3d 298 (2013).
Moreover, an authoritative treatise on the State motor vehicle insurance law likewise agrees with this interpretation. See A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011) § 9.8(A)(7) at pp. 541-44. The treatise author ties this interpretation of the exclusion to the rest of the motor vehicle insurance law:
In many respects, the exclusion of insureds who own uninsured vehicles is a common denominator running through Maryland’s comprehensive motor vehicle insurance scheme. This exclusion appears, in various forms, in Subtitle 5’s regulation of PIP and uninsured motorist coverages, and in the Uninsured Division [of the Maryland Automobile Insurance Fund] sections of Subtitle 6. The purpose of the exclusion is simple. It furthers Maryland’s comprehensive insurance scheme by encouraging the owner of an uninsured motor vehicle to become insured by imposing on him the penalty of exclusion form coverage for failure to obtain insurance.
Id. at p. 543 (quotation marks and citations omitted). After analyzing IN § 19—505(c)(l)(ii) in some detail, the treatise author concludes that “uninsured should be given its ordinary meaning—a vehicle without insurance—though, arguably it also includes a vehicle insured by a policy with liability insurance that did not meet the requirements of Title 17 of the Transportation Article.” Id. at p. 544. In the case before us, Mr. Bundu-Conteh’s taxicab is not a vehicle without insurance; nor is it a vehicle whose policy does not comply with the requirements of Title 17 of the Transportation Article.
It is also notable that a related provision of the State insurance law provides that an insurer who provides a policy with PIP coverage “shall pay [PIP] benefits ... to an individ *376 ual insured under the policy who is injured in a motor vehicle accident ... while occupying a motor vehicle for which [PIP] coverage[ ] [is] not in effect.” IN § 19—513(d)(l)(i) (emphasis added). This indicates that the absence of PIP coverage does not equate to “uninsured” for purposes of IN § 19-505(c)(l)(ii).[14] This Court has opined that this provision is directly aimed at accidents in which the insured occupies a taxicab or bus, as taxicabs and buses are vehicles for which PIP coverage would not be in effect. Nasseri v. GEICO, 390 Md. 188, 194-95, 888 A.2d 284 (2005). “Section 19-513(d) guarantees that persons who have purchased PIP ... coverage are entitled to [that] coverage, even when the vehicles insured under their policy are not involved in the accident.” Janquitto, supra, § 9.14(B) at p. 586.

Summary

For the reasons outlined above, I would hold that a properly insured taxicab is not an “uninsured” vehicle for purposes of the exclusion authorized by IN § 19—505(c)(l)(ii).[15]
*377 Accordingly, I would confirm the decision of the agency in this case.
Chief Judge Barbera and Judge Greene advise that they join this dissent.

. The Majority opinion also devotes considerable space to explaining why a taxicab is a "vehicle" for purposes of the PIP statute despite the exclusion of taxicabs from the definition of the term "vehicle” in the statute. Majority op. at 351-61, 152 A.3d at 811-17. While the Majority opinion must surmount that significant hurdle in order to agree with State Farm on the outcome of this case, we need not decide that question in order to decide this case correctly. See footnote 15 below.

. Nasseri v. GEICO, 390 Md. 188, 888 A.2d 284 (2005).

. Taxicabs and buses were excluded from the requirement to have PIP coverage by the General Assembly in the late 1970s. Chapter 655, Laws of Maryland 1977; Chapter 819, Laws of Maryland 1978, There is some indication in the legislative history, in testimony apparently provided by proponents of the bill excluding taxicabs, that PIP coverage had not been intended for commercial enterprises such as cab companies and common carriers, and that the PIP coverage of taxicabs had proved duplicative of other coverage, such as worker’s compensation insurance. See Bill file for House Bill 1272 (1977).
The Public Service Commission specifies insurance coverage for taxicabs for which a permit is required. Maryland Code, Public Utilities Article, § 10-207. The Commission does not specify PIP coverage in its regulations, See COMAR 20,90.02.19, 20.90.03.17.

. IN § 19—505(c)(l)(i)2. Another provision permits an insurer to exclude certain benefits, but not all PIP coverage, with respect to motorcycles, mopeds, and motor scooters. IN § 19-505(c)(2).

. IN § 19-505(c)(l)(i)l.

. IN § 19—505(c)(l)(i)3.

. IN § 19-505(c)(l)(i)4.

. See Maryland Code, Transportation Article, § 17-104.

. The Majority opinion relies primarily on GEICO v. Comer, 419 Md. 89, 18 A.3d 830 (2011), by analogy for this proposition. Majority op. at 345-48, 363-66, 152 A.3d at 808-10, 819-20. The analogy does not work. In that case, Mr. Comer was injured while riding a motorcycle in an accident with an underinsured motorist. He was eligible for uninsured motorist ("UM”) benefits under both the policy that covered the motorcycle, as well as a more generous policy covering his father’s automobile. The UM provision of the motorcycle policy was exhausted as a result of a set-off by benefits obtained from the tortfeasor’s policy and Mr. Comer therefore sought UM benefits under the more generous provisions of his father’s policy. The insurer of the father's policy declined to provide UM benefits to Mr. Comer under an exclusion that pertained to injuries suffered while occupying a vehicle not covered by that policy. This Court held that the policy exclusion was permissible under a provision of the UM statute. The Court reasoned that the purpose of such an exclusion “is obviously to prevent a family, owning several motor vehicles, from insuring only one or two of them with an insurer, leaving the other vehicles uninsured, or underinsured under a different policy, and being able to claim uninsured or underinsured motorist benefits from the first insurer ....” 419 Md. at 98, 18 A.3d 830.
As noted in the text above, in contrast to the UM statute, the PIP statute contains a waiver provision under which a waiver for one vehicle would waive PIP coverage for all. Thus, the circumstance imagined in the Majority opinion—obtaining PIP coverage for one vehicle, waiving it for other vehicles owned by the same person, and attempting to collect PIP benefits for accidents involving the other vehicles—would not occur.
*373 State Farm made a similar "windfall” argument in its brief but, presumably because it does not work, abandoned it at oral argument in favor of a "windfall” scenario that might be termed "Seven Cabs for Seven Brothers.” Under this scenario, several siblings would all live in the same household, would all have PIP coverage under the same vehicle owned by a parent, would all own taxicabs insured without PIP coverage, and would all have claims resulting from motor vehicle accidents involving their respective cabs. Perhaps that is possible in some universe, but it appears to be in the same realm as the monkey who pecks at a typewriter for eternity and eventually produces a complete copy of Hamlet.

. The Court also held that a policy provision that excluded uninsured motorist ("UM”) coverage for individuals like the claimant in Gartel-man was also not authorized by the statute in that the statutory authorization only permitted exclusion of UM benefits for the owner of an uninsured vehicle involved in the accident and not other insured parties, such as the claimant.

. In its analysis of the Gartelman decision, the Majority opinion concludes that a construction of IN § 19—505(c)(l)(ii) to refer to a vehicle without any insurance would lead to the same result in Gartel-man as under the prior statute and therefore be contrary to legislative intent. Majority op. at 361-62, 152 A.3d at 818. That conclusion is incorrect. The vehicle occupied by the claimant in Gartelman lacked any insurance.

. Gartelman, 288 Md. at 159, 416 A.2d 734.

. See Gartelman, 288 Md. at 159-60, 416 A.2d 734 (discussing remedial purpose of uninsured motorist coverage).

. State Farm asserts that such an interpretation contradicts the authorized exclusion for an "owned but uninsured” vehicle in IN § 19-505(c)(l)(ii). But there is only a contradiction if one adopts the extremely broad interpretation of the exclusion advanced by State Farm. If one interprets these provisions according to their plain language, they are perfectly compatible. A well-known canon of statutory construction prefers compatible constructions of statutory language over contradictory constructions. E.g., CashCall, Inc. v. Maryland Commissioner of Financial Regulation, 448 Md. 412, 431, 139 A.3d 990 (2016). The "owned but uninsured” exclusion provision (IN § 19—505(c)(l)(ii)) allows exclusion of benefits when the insured occupies a vehicle that the insured owns and that carries no insurance. By contrast, IN § 19-513(d)(l)(i) makes clear that PIP benefits are to be paid when the insured is injured while occupying a vehicle without PIP coverage. In this case, Mr. Bundu-Conteh's taxicab was properly insured; therefore, the exclusion authorized by IN § 19—505 (c)(1)(ii) does not apply. But that taxicab, consistent with Maryland law, did not itself have PIP coverage and thus PIP coverage was "not in effect.” IN § 19-513(d)(l)(i) makes clear that, in that situation, PIP benefits are to be paid.

. As noted earlier, the decision reached by the Majority opinion also depends on its conclusion that a taxicab is a "vehicle” for purposes of IN § 19—505(c)(l)(ii), despite the fact that taxicabs are excluded from the definition of "vehicle” in IN § 19-501(b)—a definition that applies *377 to IN § 19—505(c)(l)(ii). I see no need to reach that issue. That is because: (1) there is no dispute in this case that Mr. Bundu-Conteh was involved in a "motor vehicle accident” because, as in Nasseri, 390 Md. at 193-94, 888 A.2d 284, the other car involved in the accident was not a taxicab; and (2) Mr. Bundu-Conteh’s taxicab was not "uninsured” for the reasons set forth in the text.