Maryland Insurance Administration v. State Farm Mutual Automobile Insurance Company et al., No. 41, September Term, 2016

**MOTOR VEHICLE INSURANCE – PERSONAL INJURY PROTECTION COVERAGE – OWNED BUT UNINSURED EXCLUSION – MARYLAND CODE ANN., INS. (1997, 2011 REPL. VOL., 2016 SUPP.) § 19-505 –** Court of Appeals held that insurer of personal motor vehicle liability insurance policy, which includes personal injury protection ("PIP") coverage, is not responsible, as result of application of personal motor vehicle liability insurance policy's owned but not insured exclusion, for PIP coverage for injuries insured sustained while driving taxicab owned by insured but not covered by personal motor vehicle liability insurance policy. In reaching conclusion, Court of Appeals determined that: (1) taxicab is "motor vehicle" for purposes of statutory exclusion from PIP coverage set forth in Md. Code Ann., Ins. (1997, 2011 Repl. Vol., 2016 Supp.) ("IN") § 19-505(c)(1)(ii) and for payment of benefits under IN § 19-513(d)(1)(i); (2) "uninsured motor vehicle" under IN § 19-505(c)(1)(ii) means uninsured for PIP coverage, such that motor vehicle, including taxicab, that is not insured for PIP coverage is "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii); and (3) exclusion in personal motor vehicle insurance policy in this case is authorized by statutory exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii), owned but uninsured exclusion.

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2016

_____

MARYLAND INSURANCE
ADMINISTRATION

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.
Barbera, C.J., Greene and McDonald, JJ.,
dissent

_____

Filed: January 23, 2017

This case requires the Court to determine whether an insured may receive personal injury protection ("PIP") coverage, under a personal motor vehicle liability insurance policy held by the insured, for injuries sustained while driving a taxicab owned by the insured but not covered by the personal motor vehicle liability insurance policy, where the personal motor vehicle liability insurance policy contains an exclusion for motor vehicles owned but not insured under the policy. Under Maryland law, generally, insurers are required to provide drivers with liability, PIP, and uninsured/underinsured motorist ("UM/UIM") coverage. See Md. Code Ann., Ins. (1997, 2011 Repl. Vol., 2016 Supp.) ("IN") §§ 19-504, 19-505, 19-509; Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2016 Supp.) ("TR") § 17-103. And, where a motor vehicle insurance policy contains PIP coverage and UM/UIM coverage, an insurer is required to provide PIP coverage to an insured or an insured's resident family member who is injured in a motor vehicle accident "while occupying a motor vehicle for which the coverages described in [IN] §§ 19-505 [(PIP coverage)] and 19-509 [(UM/UIM coverage)] are not in effect[.]" IN § 19-513(d)(1)(i). The definition of a "motor vehicle" set forth in IN § 19-501(b)(2)(ii), however, expressly excludes taxicabs as "motor vehicles" for purposes of Subtitle 5 of Title 19 of the Insurance Article; thus, IN § 19-505(a) does not require insurers to offer PIP coverage in policies insuring taxicabs.

This case raises the overall issue of whether an insurer of a personal motor vehicle liability insurance policy, which includes PIP coverage, is responsible for PIP coverage for injuries that an insured sustained while driving a taxicab owned by the insured but not covered by the personal motor vehicle liability insurance policy, or whether the personal

motor vehicle liability insurance policy's owned but not insured exclusion applies, such that the insurer is not responsible for PIP coverage under those circumstances. To answer that overarching question, this Court must determine three very specific issues: (1) whether a taxicab is a "motor vehicle" for purposes of the statutory exclusion from PIP coverage under IN § 19-505(c)(1)(ii) and for the payment of benefits under IN § 19-513(d)(1)(i); (2) whether "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii) means uninsured altogether, uninsured for PIP coverage, or not insured under the relevant motor vehicle liability insurance policy; and (3) whether the exclusion in the personal motor vehicle liability insurance policy in this case—which excluded coverage, in pertinent part, for the insured "while occupying a motor vehicle owned by [the insured] . . . and which is not insured under the liability coverage of this policy" (capitalization omitted)—is authorized by the statutory exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii), the "owned but uninsured" exclusion.

As to the primary question presented in this case, we hold that an insurer of a personal motor vehicle liability insurance policy, which includes PIP coverage, is not responsible, as a result of the application of the personal motor vehicle liability insurance policy's owned but not insured exclusion, for PIP coverage for injuries the insured sustained while driving a taxicab owned by the insured but not covered by the personal motor vehicle liability insurance policy. As to the more specific underlying issues, we conclude that: (1) a taxicab is a "motor vehicle" for purposes of the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii) and for the payment of benefits under IN § 19-513(d)(1)(i); (2) "uninsured motor vehicle" under IN § 19-

- 2 -

505(c)(1)(ii) means uninsured for PIP coverage, such that a motor vehicle, including a taxicab, that is not insured for PIP coverage is an "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii); and (3) the exclusion in the personal motor vehicle insurance policy in this case is authorized by the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii). Accordingly, we affirm the judgment of the Court of Special Appeals.

## BACKGROUND

On November 14, 2011, Alhassan Bundu-Conteh ("Bundu-Conteh"), Respondent, was rear-ended by a motor vehicle while driving his taxicab. Bundu-Conteh sustained personal injuries. At the time of the accident, Bundu-Conteh owned two vehicles: a 1997 Jeep Grand Cherokee ("the Jeep") and a 2006 Ford Crown Victoria taxicab ("the taxicab"). The Jeep was insured under a liability and no-fault policy with State Farm Mutual Automobile Insurance Company ("State Farm"), Respondent, which included PIP coverage. The taxicab was insured by Amalgamated Insurance Company ("Amalgamated") and carried liability-only coverage, which does not include PIP coverage.[1]

Following the accident, Bundu-Conteh submitted a PIP claim to State Farm for the injuries that he sustained. State Farm denied Bundu-Conteh's PIP claim, relying on the

---

[1]As discussed in more detail below, under Maryland law, taxicabs are not required to carry PIP or UM/UIM coverage. See Maryland Auto. Ins. Fund v. Sun Cab Co., Inc., 305 Md. 807, 813, 506 A.2d 641, 644 (1986) ("[T]here was no facial inconsistency between the stated purpose 'of exempting certain vehicles . . . from certain required primary coverage insurance provisions' and the effect of excluding taxicabs from PIP and UM coverage.").

following exclusion ("the third exclusion") for no-fault coverage:

Exclusions

THERE IS NO COVERAGE:

* * *

3. FOR YOU OR ANY RESIDENT RELATIVE WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE AND WHICH IS NOT INSURED UNDER THE LIABILITY COVERAGE OF THIS POLICY[.]

Bundu-Conteh subsequently filed a complaint with the Maryland Insurance Administration ("the MIA"), Petitioner. In the complaint, Bundu-Conteh contended that the third exclusion was inapplicable to him because, at the time of the accident, he was driving a taxicab, which IN § 19-501(b)(2)(ii) excludes from the definition of "motor vehicle."[2] Alternatively, Bundu-Conteh argued that, even if the taxicab were categorized as a "motor vehicle," the third exclusion in the State Farm policy is incompatible with well-settled Maryland law.

---

[2]IN § 19-501(b) provides:

(1) "Motor vehicle" means a vehicle, including a trailer, that is operated or designed for operation on a public road by any power other than animal or muscular power.
(2) "Motor vehicle" does not include:
(i) a bus as defined in [TR] § 11-105 []; or
(ii) a taxicab as defined in [TR] § 11-165 [].

On December 27, 2012, after completing its review of the case, the MIA concluded

that State Farm's denial of Bundu-Conteh's PIP claim violated IN §§ 4-113,[3] 19-505,[4] 19-

513,[5] and 27-303.[6]  Specifically, the MIA determined that, pursuant to IN § 19-513(d),

---

[3]IN § 4-113(b)(5) provides:

(b) *Discretionary grounds*. – The Commissioner may deny a certificate of authority to an applicant or, subject to the hearing provisions of Title 2 of this article, refuse to renew, suspend, or revoke a certificate of authority if the applicant or holder of the certificate of authority: . . . (5) refuses or delays payment of amounts due claimants without just cause[.]

(Paragraph break omitted).

[4]The "owned but uninsured" exclusion under IN § 19-505(c)(1)(ii) provides:

(1) An insurer may exclude from the coverage described in this section benefits for:

. . .

    (ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:
        1. the named insured; or
        2. an immediate family member of the named insured who resides in the named insured's household.

[5]IN § 19-513 provides, in relevant part:

(d) *Payment of benefits – Coverage under subtitle not in effect*. – (1) The insurer under a policy that contains the coverages described in §§ 19-505 and 19-509 of this subtitle shall pay the benefits described in §§ 19-505 and 19-509 to an individual insured under the policy who is injured in a motor vehicle accident:
    (i) while occupying a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect; or
    (ii) by a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect as a pedestrian, while in, on, or alighting from a vehicle powered by animal or muscular power, or while on or alighting from an animal.

[6]IN § 27-303(2) provides:

State Farm is obligated to provide PIP benefits to its insured policy holders who are injured in a motor vehicle accident, subject to limited exclusions. According to the MIA, the third exclusion in State Farm's policy is incompatible with the exclusions under IN § 19-505(c) and thus constitutes "an arbitrary and capricious denial of a claim without just cause[.]"

On January 25, 2013, State Farm appealed the MIA's determination and requested a hearing. Specifically, State Farm contended that the third exclusion fell squarely within the "owned but uninsured" exclusion under IN § 19-505(c)(1)(ii) and, thus, was permissible. According to State Farm, the taxicab was "uninsured" for the purposes of IN § 19-505(c)(1)(ii) because it was not insured under the State Farm policy. Both State Farm and the MIA, on Bundu-Conteh's behalf, filed with the Maryland Insurance Commissioner ("the Commissioner") cross-motions for summary decision. On August 15, 2013, the Commissioner held a hearing on the cross-motions for summary decision. On January 24, 2014, the Commissioner issued a Memorandum and Final Order, concluding that State Farm's denial of coverage to Bundu-Conteh violated IN §§ 19-505 and 19-513. The Commissioner determined that the third exclusion is not a permissible exclusion under IN § 19-505(c). Specifically, the Commissioner determined that, under the plain language of

---

It is an unfair claim settlement practice and a violation of this subtitle for an insurer, nonprofit health service plan, or health maintenance organization to: . . . (2) refuse to pay a claim for an arbitrary or capricious reason based on all available information[.]

(Paragraph break omitted).

IN § 19-505(c)(1)(ii), the meaning of "uninsured motor vehicle" is "a motor vehicle without insurance." Thus, the Commissioner concluded that to interpret IN § 19-505(c)(1)(ii) as excluding coverage for individuals like Bundu-Conteh, who carried PIP coverage on their vehicles and were not injured while in an "uninsured" vehicle, "would be contrary to the remedial legislative purpose of assuring compensation for damages to victims of motor vehicle accidents without regard to fault." The Commissioner, therefore, granted the MIA's motion for summary decision and ordered State Farm to pay Bundu-Conteh's PIP claim arising from the accident plus 1.5% interest for each intervening month starting 30 days after Bundu-Conteh first submitted his PIP claim.

On February 20, 2014, State Farm filed in the Circuit Court for Baltimore City ("the circuit court") a petition for judicial review. On January 9, 2015, the circuit court issued a Memorandum and Order reversing the Commissioner's Final Order. On January 29, 2015, the MIA noted an appeal to the Court of Special Appeals. In an unreported opinion dated March 15, 2016, the Court of Special Appeals affirmed the judgment of the circuit court. State Farm subsequently requested that the Court of Special Appeals report the opinion. On June 1, 2016, the Court of Special Appeals reported the opinion. See Md. Ins. Admin. v. State Farm Mut. Auto. Ins. Co., 228 Md. App. 126, 137 A.3d 310 (2016). The MIA thereafter filed in this Court a petition for a writ of *certiorari*, which we granted on September 2, 2016. See Md. Ins. Admin. v. State Farm Mut. Auto. Ins., 450 Md. 102, 146 A.3d 463 (2016).

## DISCUSSION

### The Parties' Contentions

The MIA contends that the Court of Special Appeals erred by not affording deference to the Commissioner's interpretation of IN § 19-505. According to the MIA, the Commissioner correctly determined that, at the time of the accident, Bundu-Conteh was not driving an "uninsured motor vehicle" and, thus, the exclusion under IN § 19-505(c)(1)(ii) does not apply. Indeed, the MIA argues that the taxicab was neither a "motor vehicle" nor "uninsured." Furthermore, the MIA asserts that the third exclusion of State Farm's policy is not authorized by IN § 19-505(c), and thus is invalid.

State Farm responds that the Commissioner's interpretation of "uninsured" for purposes of IN § 19-505 was erroneous. Specifically, State Farm argues that well-established Maryland law requires that the definition of "uninsured motor vehicle" be interpreted contextually, and, in this context, "uninsured motor vehicle" refers to vehicles without PIP coverage. Thus, State Farm asserts that Bundu-Conteh's taxicab was, by definition, an uninsured motor vehicle at the time of the accident.

State Farm further contends that the Commissioner's interpretation of the taxicab as "insured" for the purposes of IN § 19-505 provides a windfall for individuals like Bundu-Conteh, who, theoretically, could carry PIP coverage on only one vehicle, purchase multiple other vehicles, insure them at the bare minimum level of coverage, and subsequently rely on the single PIP policy to cover all of the vehicles. State Farm also argues that the Commissioner misapplied relevant Maryland case law. Specifically, State Farm argues that the Commissioner erroneously relied on Nasseri v. GEICO Gen. Ins. Co.,

390 Md. 188, 888 A.2d 284 (2005), which, according to State Farm, is distinguishable from the instant case, as it did not contemplate the owned but uninsured exclusion under IN § 19-505(c)(1)(ii).

In reply, the MIA contends that the Commissioner's plain language interpretation of "uninsured motor vehicle" is consistent with the underlying legislative intent underlying the no-fault provisions of the Insurance Article. The MIA argues that the General Assembly enacted the owned but uninsured exclusion to specifically address "uninsured" vehicles— *i.e.* vehicles entirely lacking insurance—not those lacking only PIP coverage. Additionally, the MIA asserts that the statutes in the Insurance Article are remedial, and should be liberally construed in favor of the insured. Furthermore, the MIA maintains that the Commissioner's interpretation of IN § 19-505 would not provide insured motorists like Bundu-Conteh with a windfall, but, in the event that it did, this would be an issue for the General Assembly to resolve.

## Standard of Review

In <u>Md. Aviation Admin. v. Noland</u>, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005), this Court stated:

> A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

(Citations and internal quotation marks omitted); <u>see also Charles Cnty. Dep't of Soc. Servs. v. Vann</u>, 382 Md. 286, 295, 855 A.2d 313, 319 (2004) ("When an agency makes 'conclusions of law' in a contested case, the [Administrative Procedure Act] permits the

court, on judicial review, to decide the correctness of the agency's conclusions and to substitute the court's judgment for that of the agency's." (Citations omitted)). Furthermore, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." Bd. of Physician Quality Assurance v. Banks, 354 Md. 59, 69, 729 A.2d 376, 381 (1999) (citations omitted). "However, if we determine that the agency's decision is based on an erroneous conclusion of law, no deference is given to those conclusions." Kenwood Gardens Condos., Inc. v. Whalen Props., LLC, 449 Md. 313, 325, 144 A.3d 647, 655 (2016).

In addition, because the issue in this case involves statutory interpretation, we set forth the pertinent rules of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.
>
> If the language of the statute is ambiguous, however, then courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives, and the purpose of the enactment under

consideration. We have said that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute. When a statute can be interpreted in more than one way, the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal.

If the true legislative intent cannot be readily determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

In construing a statute, we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

In addition, the meaning of the plainest language is controlled by the context in which is appears. As this Court has stated, because it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

Bottini v. Dep't of Fin., 450 Md. 177, 187-89, 147 A.3d 371, 378 (2016) (citation omitted).

## Relevant Law

In 1972, the General Assembly required PIP coverage as part of a larger statutory scheme that introduced no-fault coverage to the Maryland insurance marketplace and created the Maryland Automobile Insurance Fund ("the MAIF") to expand access to motor vehicle insurance. See 1972 Md. Laws 281-82 (Ch. 73, H.B. 444). This Court has remarked that "[t]he requirement of [PIP] coverage was a major innovation in 1972; it represented the State's limited endorsement of the concept of no-fault automobile insurance, then being widely touted as the answer to perceived flaws in our system of

compensating those injured in motor vehicle accidents." Md. Auto. Ins. Fund v. Perry, 356

Md. 668, 675, 741 A.2d 1114, 1118 (1999). Broadly, "[t]he thrust of the 1972 law was to

extend, not restrict, insurance protection, especially a limited amount of primary, no-fault

benefits for wage loss and basic medical expenses." Id. at 675, 741 A.2d at 1118. Indeed,

this Court has explained:

> PIP is a form of no fault insurance, that allows the insured to recover for medical expenses and lost income resulting from a motor vehicle accident. Its main purpose is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits.

TravCo Ins. Co. v. Williams, 430 Md. 396, 403, 61 A.3d 50, 53-54 (2013) (citations and

internal quotation marks omitted); see also Bishop v. State Farm Mut. Auto Ins., 360 Md.

225, 230, 757 A.2d 783, 785 (2000) (same).

Under IN § 19-505(a), insurers are required to provide PIP coverage as part of their

policies:[7]

> (a) *Coverage required.* – Unless waived in accordance with § 19-506 of this subtitle or rejected in accordance with § 19-506.1 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:
>
> > (1) except for individuals specifically excluded under § 27-609 of this article:
> >
> > > (i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident

---

[7]In the 2016 Legislative Session, the General Assembly amended IN §§ 19-505 and 19-506 and TR § 17-103, and enacted IN § 19-506.1, to permit an insured to reject certain PIP benefits in some instances. See 2016 Md. Laws 5844-45 (Vol. VII, Ch. 426, H.B. 900). The recent legislation has no bearing on the decision in this case.

- 12 -

that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained; and

      (ii) any other individual who is injured in a motor vehicle accident while using the insured motor vehicle with the express or implied permission of the named insured;

      (2) an individual who is injured in a motor vehicle accident while occupying the insured motor vehicle as a guest or passenger; and

      (3) an individual who is injured in a motor vehicle accident that involves the insured motor vehicle:

      (i) as a pedestrian; or

      (ii) while in, on, or alighting from a vehicle that is operated by animal or muscular power.

As to the amount of PIP coverage required, IN §19-505(b)(2) provides that "[t]he minimum medical, hospital, and disability benefits provided by an insurer under this section shall include up to $2,500 for" various payments.

Under IN § 19-506(a), however, an insured may waive PIP coverage.[8]  If an insured waives PIP coverage, the insured is prevented from making a claim for PIP under **any** policy.  See Perry, 356 Md. at 676, 741 A.2d at 1118 ("In allowing insureds to waive PIP benefits under their own policies, however, the [General Assembly] determined that a

---

[8]In relevant part, IN § 19-506(a) provides as follows:

      (1) If the first named insured does not wish to obtain the benefits described in § 19-505 of this subtitle, the first named insured shall make an affirmative written waiver of those benefits.
      (2) If the first named insured does not make an affirmative written waiver under this section, the insurer shall provide the coverage described in § 19-505 of this subtitle.

waiver of PIP benefits was a *total* waiver, and that, if an insured waived such benefits under his/her own policy, the insured could not collect those benefits from any other insurer." (Emphasis in original).[9] Similarly, an insured may also waive higher levels of UM/UIM coverage, provided that the insured carries liability insurance in excess of the minimum coverage required under Maryland law. See IN § 19-510(a) and (b); Swartzbaugh v. Encompass Ins. Co. of Am., 425 Md. 614, 618, 42 A.3d 587, 589 (2012) ("Under the State insurance code, UM coverage under a motor vehicle insurance policy is by default equal to the liability coverage under the policy. This level of coverage may be waived, however, in favor of a lesser amount at least equal to the minimum coverage required by the motor vehicle law." (Citations omitted)).

IN § 19-513(d)(1) governs the payment of benefits where coverage under IN §§ 19-505 and 19-509 is not in effect, providing as follows:

The insurer under a policy that contains the coverages described in §§ 19-505 and 19-509 of this subtitle shall pay the benefits described in §§ 19-505 and 19-509 to an individual insured under the policy who is injured in a motor vehicle accident:

(i) while occupying a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect; or

(ii) by a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect as a pedestrian, while in, on, or alighting from a vehicle powered by animal or muscular power, or while on or alighting from an animal.

---

[9]Additionally, pursuant to IN § 19-506.1(a), an applicant for a motor vehicle liability insurance policy may reject PIP coverage under certain circumstances.

Indeed, unlike liability coverage, generally, PIP coverage follows the insured, not the motor vehicle. See Nasseri, 390 Md. at 196, 888 A.2d at 288 ("The language of the Insurance Article, as well as numerous opinions by this Court, make it clear that an insured, who has PIP coverage under a policy on the insured's motor vehicle, and who is injured in an accident while occupying a different motor vehicle owned by someone else, is ordinarily entitled to PIP coverage under the policy on the insured's vehicle.").

One exception to the requirement of PIP coverage—aside from waiver or rejection of PIP coverage under IN §§ 19-506 and 19-506.1, respectively—involves taxicabs. IN § 19-501(b)(2)(ii), states that the term "motor vehicle" "does not include . . . a taxicab as defined in § 11-165 of the Transportation Article." A taxicab is not required to be insured under a policy that includes PIP coverage.[10] In Nasseri, 390 Md. at 195-96, 888 A.2d at 288, we noted that the purpose of the legislation excluding a taxicab from the definition of "motor vehicle" "was simply to provide that the compulsory automobile liability insurance policies on taxicabs and certain other vehicles did not have to contain policy provisions for PIP and some other statutory coverages." See also id. at 191, 888 A.2d at 285 ("At the time of the accident, the taxicab was covered only by liability insurance, in accordance with the minimum requirements of Maryland law applicable to taxicabs.").

---

[10]At oral argument, the MIA emphasized that Bundu-Conteh had not waived PIP coverage with Amalgamated, but rather had never been offered PIP coverage by Amalgamated. Under IN §§ 19-501(b)(2)(ii) and 19-505, however, Amalgamated was not obliged to offer PIP coverage, as taxicabs are excluded from the requirement that an insurer provide PIP coverage unless waived or rejected by the insured.

- 15 -

Additionally, under certain circumstances, an insurer may exclude PIP coverage. See IN § 19-505(c). Relevant to this case is the "owned but uninsured" exclusion set forth in IN § 19-505(c)(1)(ii):

An insurer may exclude from the coverage described in this section benefits for:

. . .

(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

1. the named insured; or

2. an immediate family member of the named insured who resides in the named insured's household.

The General Assembly created the owned but uninsured exclusion through the enactment Chapter 573 of the Acts of 1982 ("Chapter 573"). 1982 Md. Laws 3442-43 (Vol. IV, Ch. 573, S.B. 983); see also Nasseri, 390 Md. at 200-01, 888 A.2d at 291. Chapter 573 introduced the following language regarding PIP coverage:

THE INSURER MAY EXCLUDE FROM THE COVERAGE PRESCRIBED IN § 539, BENEFITS FOR THE NAMED INSURED OR MEMBERS OF HIS FAMILY RESIDING IN THE HOUSEHOLD WHEN OCCUPYING AN UNINSURED MOTOR VEHICLE THAT IS OWNED BY THE NAMED INSURED OR A MEMBER OF HIS IMMEDIATE FAMILY RESIDING IN HIS HOUSEHOLD.

1982 Md. Laws 3444 (Vol. IV, Ch. 573, S.B. 983).[11] Chapter 573 provided similar language regarding exclusion of UM/UIM coverage:

---

[11]As stated above, the owned but uninsured exclusion is now codified as IN § 19-505(c)(1)(ii).

HOWEVER, THE INSURER MAY EXCLUDE FROM COVERAGE BENEFITS FOR THE NAMED INSURED OR MEMBERS OF HIS FAMILY RESIDING IN THE HOUSEHOLD WHEN OCCUPYING, OR STRUCK AS A PEDESTRIAN BY, AN UNINSURED MOTOR VEHICLE THAT IS OWNED BY THE NAMED INSURED OR A MEMBER OF HIS IMMEDIATE FAMILY RESIDING IN HIS HOUSEHOLD.

1982 Md. Laws 3443 (Vol. IV, Ch. 573, S.B. 983).[12]

The General Assembly created the owned but uninsured exclusion on the heels of this Court's decision in Pa. Nat'l Mut. Cas. Ins. Co. v. Gartelman, 288 Md. 151, 416 A.2d 734 (1980). In that case, the plaintiff, Doris Gartelman ("Gartelman"), was injured while driving her husband's moped when another motor vehicle forced the moped off the road. See id. at 153, 416 A.2d at 735. At the time of the accident, the moped was uninsured, but Gartelman claimed PIP and UM coverage under her husband's insurance policy with Pennsylvania National Mutual Casualty Insurance ("Pennsylvania National"). See id. at 153, 416 A.2d at 735. Pennsylvania National denied Gartelman's claim, relying on an owned but uninsured exclusion in the policy. See id. at 155, 416 A.2d at 736. Given that Maryland's motor vehicle insurance statutes did not include or authorize an owned but uninsured exclusion, this Court invalidated Pennsylvania National's policy exclusion, explaining:

> [The statute] expressly provides for only four exclusions from the required PIP coverage. It does not expressly provide an exclusion for an insured occupying an uninsured motor vehicle owned by a named insured. We decline to insert such an exclusion which would be contrary to the remedial legislative purpose of assuring compensation for damages to victims of motor vehicle accidents without regard to fault.

---

[12]The owned but uninsured exclusion for UM/UIM coverage is now codified as IN § 19-509(f)(1).

Id. at 156-157, 416 A.2d at 737. Indeed, following Gartelman, we remarked that "this Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the [General Assembly] generally will not be recognized." Nasseri, 390 Md. at 198, 888 A.2d at 290 (citations and internal quotation marks omitted).

In rendering the Final Order, the Commissioner relied on Nasseri, 390 Md. 188, 888 A.2d 284, so we set forth the facts and holdings of that case in detail. In Nasseri, id. at 196, 888 A.2d at 288-89, we held that a taxicab driver was entitled to PIP coverage from the insurance policy on his personal vehicle when he sustained injuries in a motor vehicle accident while driving a taxicab that he did not own. The plaintiff, Ebrahim Nasseri ("Nasseri"), was injured in a motor vehicle accident while driving a taxicab that belonged to Action Taxicab, Inc. See id. at 191, 888 A.2d at 285. The taxicab was covered under a liability-only policy, but Nasseri maintained insurance coverage, including PIP coverage, on his personal vehicle through GEICO General Insurance Company ("GEICO"). See id. at 191, 888 A.2d at 285-86. Nasseri filed a claim on his GEICO policy for the injuries that he sustained in the accident. See id. at 191, 888 A.2d at 286. GEICO denied the claim, arguing that, because Nasseri was driving a taxicab at the time of the accident, he was not injured in a "motor vehicle accident" for purposes of IN § 19-505. Nasseri, 390 Md. at 191, 888 A.2d at 286. Furthermore, GEICO asserted that Nasseri's policy did not apply because it included an exclusion that specified that an insured was "not covered if injured while in, or through being struck by, any motor vehicle which is not an insured auto if it is . . . available for the regular use of the insured." Id. at 190-92, 888 A.2d at 285-86 (ellipsis

- 18 -

in original) (internal quotation marks omitted). The trial court found in favor of GEICO.

See id. at 192, 888 A.2d at 286. We reversed. See id. at 193, 888 A.2d at 286.

Turning first to the issue of whether Nasseri was involved in a "motor vehicle

accident," we observed the following:

> For purposes of this case, we shall assume *arguendo* that the statutory phrase "motor vehicle accident" in subsection [IN § 19-501](c)(1) incorporates the taxicab exclusion in subsection [IN § 19-501](b)(2)(ii), and that an accident between two taxicabs might not be a "motor vehicle accident" within the meaning of subsection [IN § 19-501](c)(1). Nevertheless, as long as another motor vehicle, which is not a taxicab or bus, is involved in the accident, such accident plainly comes within the definition of "motor vehicle accident" in subsection [IN § 19-501](c)(1). The subsection requires only the involvement of one motor vehicle for there to be a motor vehicle accident; it does not require that all vehicles involved in the collision be "motor vehicles."
>
> . . .
>
> Nasseri was certainly injured in a motor vehicle accident under the language of the statute, and [IN] § 19-505 provides PIP coverage for anyone injured in *any* motor vehicle accident.

Nasseri, 390 Md. at 193-94, 888 A.2d at 287 (italics in original). Interpreting the language

of IN § 19-513, we explained that the circumstances of Nasseri's accident appeared to fall

squarely within the coverage contemplated under the Insurance Article:

> The applicability of [IN] § 19-505, under the circumstances of this case, is reinforced by the language of [IN] § 19-513(d)(1)(i) []. [IN §] 19-513(d)(1)(i) states:
>
>> "[](1) The insurer under a policy that contains the coverages described in §§ 19-505 and 19-509 of this subtitle shall pay the benefits described in §§ 19-505 and 19-509 to an individual insured under the policy who is injured in a motor vehicle accident:

(i) **while occupying a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect**. . . .”

It would appear that the above-quoted language was directly aimed at circumstances like those presented here. The vehicles “for which the coverages described in [IN] §§ 19-505 and 19-509” would legally not be “in effect” are taxicabs, buses, vehicles owned by the State of Maryland, and vehicles for which the first named insured has made “an affirmative written waiver of PIP benefits.” In this case, Nasseri had an insurance policy providing PIP benefits, and he was occupying a motor vehicle for which PIP benefits were not in effect. **A holding that he was not entitled to PIP benefits, precisely because he was occupying a vehicle for which PIP benefits were not in effect, could not be reconciled with [IN] § 19-513(d)(1)(i).**

Nasseri, 390 Md. at 194-95, 888 A.2d at 287-88 (emphasis added) (ellipsis in original) (brackets and footnotes omitted). We considered the legislative intent behind excluding taxicabs from classification as “motor vehicles” and observed that the rationale for doing so was merely to exclude taxicabs and certain other vehicles from compulsory PIP and similar coverage. See id. at 195-96, 888 A.2d at 288. Thus, we explained that “[t]he purpose was not to negate required PIP and other required coverages, under policies on all other types of motor vehicles, whenever a taxicab happened to be involved in an accident with another type of motor vehicle.” Id. at 196, 888 A.2d at 288. We, therefore, concluded that “an insured, who has PIP coverage under a policy on the insured’s motor vehicle, and who is injured in an accident while occupying a different motor vehicle owned by someone else, is ordinarily entitled to PIP coverage under the policy on the insured’s vehicle.” Id. at 196, 888 A.2d at 288.

- 20 -

We also considered whether GEICO's "regular use" exclusion was permissible under IN § 19-505. See Nasseri, 390 Md. at 197, 888 A.2d at 288.[13] Looking to the plain language of IN § 19-505(c), we concluded that the "regular use" exclusion was not one of the exclusions contemplated by the General Assembly, and thus was impermissible. See Nasseri, 390 Md. at 197-98, 888 A.2d at 289. We observed that, under well-settled law in Maryland, this Court will not expand the exclusions to insurance coverage beyond those explicitly enumerated by the General Assembly. See id. at 198, 888 A.2d at 289.

As to an owned but uninsured exclusion, in Gov't Emps. Ins. Co. v. Comer, 419 Md. 89, 98, 18 A.3d 830, 835 (2011), this Court upheld the exclusion of UM/UIM coverage under IN § 19-509(f)(1) when the vehicle was owned by the insured but covered under a different insurance policy. IN § 19-509(f)(1) pertains to UM/UIM benefits, and includes language that closely mirrors IN § 19-505(c)(1)(ii):

---

[13]Significant to the instant case, our analysis in Nasseri applied only to the "regular use" exclusion and not an exclusion in which the uninsured vehicle is owned by the insured, *i.e.*, an owned but uninsured exclusion; specifically, we described the "regular use" exclusion at issue in Nasseri, 390 Md. at 190 n.2, 888 A.2d at 285 n.2, as follows:

The same exclusion in the GEICO insurance policy also applies to "an . . . auto if it is owned by you or a relative . . . ." The entire PIP exclusion is as follows:

"You and your relatives are not covered if injured while in, or through being struck by, any motor vehicle which is not an insured auto if it is owned by you or a relative or available for the regular use of either."

This case does not present any issue with regard to being in or struck by an "owned" vehicle.

(Ellipses in original) (emphasis omitted).

- 21 -

(f) *Exclusions*. – An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

> (1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household[.]

In Comer, 419 Md. at 98, 18 A.3d at 835, we concluded that a motorcycle was "uninsured" for purposes of IN § 19-509(f)(1), and thus was excluded from coverage. In that case, the plaintiff, Ray Comer ("Comer"), was injured in a motor vehicle accident when his motorcycle collided with another vehicle. See id. at 91-93, 18 A.3d at 831-32. The medical costs associated with Comer's injuries exceeded $200,000. See id. at 92, 18 A.3d at 831. Comer had insured the motorcycle under a policy with Progressive Insurance Co., which included an UM/UIM limit of $50,000. See id. at 92, 18 A.3d at 831. At the time of the accident, Comer was living with his father, who owned a 2000 Buick that was covered under a policy with GEICO with a UM/UIM limit of $300,000. See id. at 92, 18 A.3d at 831. Comer filed a claim with GEICO, asserting that he qualified as "insured" because he lived with his father. See id. at 92, 18 A.3d at 832. GEICO denied Comer's claim on the ground of the following policy exclusion:

"**EXCLUSIONS**

\* \* \*

**4. *Bodily Injury*** sustained by an ***insured*** while occupying a motor vehicle owned by an ***insured*** and not described in the declarations and not covered by the bodily injury and property damage liability coverages of this policy is not covered."

- 22 -

<u>Id.</u> at 93, 18 A.3d at 832 (emphasis in original). Comer filed a complaint against GEICO, and the trial court ultimately issued a declaratory judgment in Comer's favor, finding that GEICO's exclusion was ambiguous and impermissible under IN § 19-509(f)(1). <u>See</u> <u>Comer</u>, 419 Md. at 93-95, 18 A.3d at 832-33. We reversed. <u>See</u> <u>id.</u> at 100, 18 A.3d at 836.

Turning first to the issue of ambiguity, we determined that the language in GEICO's exclusion was not ambiguous, and observed that the language of the exclusion "clearly preclude[d] coverage of Comer's claim under the GEICO policy[]" because he was driving a vehicle that he owned and that was not covered under the GEICO policy. <u>Id.</u> at 96, 18 A.3d at 834. We then considered whether the exclusion was permissible under IN § 19-509(f)(1), and concluded that it was:

> In determining whether exclusion number 4, as applied to this case, is authorized by the statute, the only possible ambiguity is the statute's reference to "an uninsured motor vehicle" owned by the family member. Nevertheless, Comer's motorcycle was "uninsured" under the declarations and liability coverage of the GEICO policy. Moreover, as earlier noted . . . the word "uninsured" in [IN] § 19-509 includes "underinsured." Comer's motorcycle was clearly an underinsured motor vehicle.

<u>Comer</u>, 419 Md. at 98, 18 A.3d at 835. In reaching this conclusion, we observed that invalidating the owned but uninsured UM/UIM exclusion could potentially produce an illogical result:

> One purpose of exclusion 4 in the GEICO policy, as well as a purpose of [IN] § 19-509(f)(1), is obviously to prevent a family, owning several motor vehicles, from insuring only one or two of them with an insurer, leaving the other vehicles uninsured, or underinsured under a different policy, and being able to claim uninsured or underinsured motorist benefits from the first insurer even though no premium was paid to the first insurer for coverage of the other vehicles. An interpretation of the Insurance Code that would allow this would be unreasonable.

- 23 -

<u>Comer</u>, 419 Md. at 98, 18 A.3d at 835.

Our holding in <u>Comer</u>, <u>id.</u> at 100, 18 A.3d at 836, was informed by the Court of Special Appeals's decision in <u>Powell v. State Farm Mut. Auto. Ins. Co.</u>, 86 Md. App. 98, 585 A.2d 286 (1991). Specifically, in <u>Powell</u>, <u>id.</u> at 100, 115, 101, 585 A.2d at 287, 294, the Court of Special Appeals concluded that an owned but uninsured exclusion was authorized by IN § 19-509(f)(1)'s predecessor.[14] In that case, Kenneth Powell ("Mr. Powell") was injured in a motor vehicle accident while driving his wife ("Mrs. Powell")'s vehicle. See <u>id.</u> at 100, 585 A.2d 286-87. Mrs. Powell's vehicle was covered under a policy with State Farm, which included $20,000/$40,000 in UM/UIM coverage. See <u>id.</u> at 100, 585 A.2d 286-87. Mr. Powell's vehicle, also covered under a policy with State Farm, included $100,000/$300,000 in UM/UIM coverage. See <u>id.</u> at 100, 585 A.2d at 287. Following the accident, Mr. Powell submitted a claim to State Farm under the policy covering his vehicle. See <u>id.</u> at 100, 585 A.2d at 287. State Farm denied the claim, relying on the following exclusion contained in the policy:

THERE IS NO COVERAGE:

* * * * * *

2. FOR *BODILY INJURY* TO *YOU* . . . WHILE *OCCUPYING* . . . A MOTOR VEHICLE OWNED BY *YOU*, YOUR SPOUSE OR ANY *RELATIVE*, and which is not insured under the liability coverage of this policy.

<u>Id.</u> at 100, 585 A.2d at 287 (emphasis in original). Mr. Powell contended that the exclusion was invalid, because, as the named insured on the policy, Mr. Powell had coverage that

---

[14]At the time that the Court of Special Appeals decided <u>Powell</u>, IN § 19-509 was codified as Art. 48A, § 541.

followed him and applied to any vehicle he drove. See id. at 100-01, 585 A.2d at 287. The

Court of Special Appeals disagreed, explaining:

> We do not believe the statute, by extending coverage to the insured when involved in any accident, enlarged the class of "insured motor vehicles" under policies of insurance. Thus, when [Mr. Powell's] policy's language excludes coverage for a *vehicle* owned by the named insured or his spouse and which was not insured under the liability coverage of "this policy," it was referring to vehicles not described in the policy of insurance at issue, such as [Mrs. Powell's vehicle]. The clause provides that the uninsured motorist coverage under Mr. Powell's policy does not apply if he was occupying a motor vehicle owned by his wife that was not described as an insured vehicle in his policy.

Id. at 102-03, 585 A.2d at 288 (emphasis in original). Thus, the Court of Special Appeals

concluded that the policy clearly excluded coverage for vehicles owned by the insured or

a member of the insured's family and not covered under the policy. See id. at 103, 585

A.2d at 288.

As to the policy's compliance with IN § 19-509(f)(1)'s predecessor, the Court of

Special Appeals observed that "when a policy provision is not in conflict with the statute,

that provision will be enforced, the statute's underlying purpose notwithstanding." Id. at

107, 585 A.2d at 290 (brackets, citation, and internal quotation marks omitted). The Court

of Special Appeals noted that the underlying policy considerations for the exclusions

contained in IN § 19-509(f)(1)'s predecessor would be contravened by Mr. Powell's

interpretation of the statute as granting coverage to the insured regardless of which vehicle

was involved in the accident:

> The obvious purpose of the policy exclusion as to uninsured vehicles is to prohibit a person from purchasing insurance for one car only and utilizing that coverage as to other vehicles owned by the insured through the "in any accident" provision of the policy. This type of prohibition is not against

public policy. To apply its language as [Mr. Powell] urges would invite multi-vehicle families to insure only one vehicle. It would play havoc with premium determinations and otherwise be detrimental to the process of providing liability protection to the motorists, and others, of Maryland. [Mr. Powell]'s interpretation of the clause, if adopted, would be, as we see it, contrary to public policy.

Id. at 107-08, 585 A.2d at 290. The Court of Special Appeals was unpersuaded by Mr. Powell's contention that his wife's vehicle was not "uninsured" for the purpose of the exclusion:

To hold as [Mr. Powell] also urges, *i.e.*, that [Mrs. Powell]'s vehicle was not *uninsured* because it was covered under another policy, would be to permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies.

Id. at 110, 585 A.2d at 291 (emphasis in original) (footnote omitted). The Court of Special Appeals found support for its holding in the legislative intent behind IN § 19-509(f)(1)'s predecessor. See Powell, 86 Md. App. at 111, 585 A.2d at 292. Indeed, the Court of Special Appeals observed that the General Assembly's addition of the "owned but uninsured" exclusion following this Court's decision in Gartelman evinced the General Assembly's intent "that the exclusion extend to vehicles owned by a named insured's spouse that are not covered under the policy at issue." Powell, 86 Md. App. at 111, 585 A.2d at 292. Thus, the Court of Special Appeals declined to "increas[e] the minimum required coverage by judicial fiat." Id. at 113, 585 A.2d at 293.

In Gonzalez v. Md. Auto. Ins. Fund, 628 A.2d 101, 101-02 (D.C. 1993), a case factually similar to the instant case, the District of Columbia Court of Appeals ("DC Court of Appeals") relied on Powell in concluding that a taxicab was an "uninsured motor

vehicle" for purposes of an owned but uninsured UM/UIM coverage exclusion. The insured, Mario Gonzalez ("Gonzalez"), owned a taxicab and a personal vehicle, which he insured under different policies. See id. at 101. Gonzalez maintained only liability coverage on the taxicab, but carried UM/UIM coverage under his policy with the MAIF on his personal vehicle. See id. Gonzalez sustained personal injuries when an uninsured motorist struck his taxicab. See id. He subsequently filed a claim for coverage with the MAIF, which denied his claim on the grounds that the taxicab was an "uninsured motor vehicle." See id. at 101-02. Applying Maryland law, the DC Court of Appeals agreed with the MAIF, concluding that, "under the reasoning of the *Powell* [C]ourt, the exclusion from [Gonzalez]'s MAIF policy of his taxi is not contrary to public policy and thus applies." Gonzalez, 628 A.2d at 103.

**Analysis**

Here, as to the overall question presented in this case, we hold that an insurer of a personal motor vehicle liability insurance policy, which includes PIP coverage, is not responsible, as a result of the application of the personal motor vehicle liability insurance policy's owned but not insured exclusion, for PIP coverage for injuries that the insured sustained while driving a taxicab owned by the insured but not covered by the personal motor vehicle liability insurance policy. Stated in terms of this case, we hold that the third exclusion in State Farm's policy applies and that State Farm is not responsible for PIP coverage for the injuries that Bundu-Conteh sustained while driving the taxicab, which was owned by Bundu-Conteh, but not insured with State Farm; *i.e.*, Bundu-Conteh is not entitled to PIP coverage under the State Farm policy. As to the more specific issues

- 27 -

underlying that predominant holding, we conclude that: (1) a taxicab is a "motor vehicle" for purposes of the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii) and the payment of benefits under IN § 19-513(d)(1)(i); (2) "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii) means uninsured for PIP coverage, such that a motor vehicle, including a taxicab, that is not insured for PIP coverage is an "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii); and (3) the third exclusion in the State Farm policy in this case is authorized by the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii).

In this case, we are confronted with a circumstance in which broad application of the statutorily provided definition of "motor vehicle" in IN § 19-501(b), and specifically IN § 19-501(b)(2)(ii)'s exclusion of a taxicab as a "motor vehicle," potentially renders other sections of Subtitle 5 of Title 19 of the Insurance Article illogical. To discern the meaning of the term "motor vehicle" as it is defined in IN § 19-501(b) and as it is used in IN § 19-505(c)(1)(ii) ("uninsured motor vehicle") and IN § 19-513(d)(1)(i) ("motor vehicle"), we apply the rules of statutory construction. We begin by examining the language of IN § 19-501(b), which provides:

(b) *Motor vehicle*. –

(1) "Motor vehicle" means a vehicle, including a trailer, that is operated or designed for operation on a public road by any power other than animal or muscular power.

(2) "Motor vehicle" does not include:

(i) a bus as defined in § 11-105 of the Transportation Article; or

- 28 -

(ii) a taxicab as defined in § 11-165 of the Transportation Article.

By its language, IN § 19-501(b) excludes certain vehicles—namely, buses and taxicabs—that would otherwise be considered "motor vehicles" under IN § 19-501(b)(1)'s definition, because a bus or a taxicab certainly is a vehicle "that is operated or designed for operation on a public road by [] power other than animal or muscular power."

We observe, however, that IN § 19-501(b)'s definition of "motor vehicle" and its exclusion of a taxicab as a "motor vehicle" differ from the ordinary, commonsense meaning and understanding of the term "motor vehicle." See Bottini, 450 Md. at 195, 147 A.3d at 382 ("To ascertain the natural and ordinary meaning of [a term], we look to dictionary definitions as a starting point." (Citation and internal quotation marks omitted)). Merriam-Webster defines a "motor vehicle" as "an automotive vehicle not operated on rails; *especially*: one with rubber tires for use on highways[.]" Motor Vehicle, Merriam-Webster (2016), http://www.merriam-webster.com/dictionary/motor+vehicle [https://perma.cc/2RJX-P5JH]. And, Black's Law Dictionary defines a "motor vehicle" as "[a] wheeled conveyance that does not run on rails and is self-propelled, esp[ecially] one powered by an internal-combustion engine, a battery or fuel-cell, or a combination of these." Motor Vehicle, Black's Law Dictionary (10th ed. 2014). Thus, under the ordinary meaning of the term "motor vehicle" and even under IN § 19-501(b)(1)'s basic definition of "motor vehicle," a taxicab is a motor vehicle.

Moreover, the ordinary meaning of "motor vehicle" closely aligns with the definition of "motor vehicle" in TR § 11-135(a), which does not contain any exclusions for

- 29 -

taxicabs or buses as IN § 19-501(b) does. For purposes of the Maryland Vehicle Law, TR

§ 11-135(a) defines a "motor vehicle" as follows:

> (a) *In general*. – (1) "Motor vehicle" means . . . a vehicle that:
>
> > (i) Is self-propelled or propelled by electric power obtained from overhead electrical wires; and
> >
> > (ii) Is not operated on rails.
>
> (2) "Motor vehicle" includes a low speed vehicle.[15]

As stated above, IN § 19-501(b) provides a similar definition of the term "motor vehicle,"

but excludes certain specified vehicles that would otherwise be considered "motor

vehicles," *i.e.*, buses and taxicabs.

Significantly, the Insurance Article does not define the term "taxicab," but instead

references the definition in TR § 11-165. See IN § 19-501(b)(2)(ii) ("'Motor vehicle' does

not include . . . a taxicab as defined in § 11-165 of the Transportation Article."). TR § 11-

165(a) defines "taxicab" as follows:

> (a) *In general*. – "Taxicab" means, except as provided in subsection (b) of this section, **a motor vehicle** for hire that:
>
> > (1) Is designed to carry seven or fewer individuals, including the driver; and
> >
> > (2) Is used to accept or solicit passengers for transportation for hire between those points along highways in this State as the passengers request.

---

[15]TR § 11-135(b) provides that a "motor vehicle" does not include a moped, a motor scooter, or an electric bicycle.

(Emphasis added).[16]  In other words, under TR § 11-165(a), a taxicab is a "motor vehicle," just as it is under the plain meaning of the term.

Thus, IN § 19-501(b)'s definition of "motor vehicle," with the exclusion of a taxicab as a motor vehicle, sharply conflicts with the ordinary meaning of the term "motor vehicle" and the definition of a "taxicab" in TR § 11-165(a).   Considering these differing definitions, it is apparent that the term "motor vehicle" is subject to more than one reasonable interpretation, specifically as it pertains to taxicabs, and thus is ambiguous. Indeed, in excluding taxicabs from categorization as "motor vehicles," IN § 19-501(b)(2)(ii) specifically references TR § 11-165, in which a "taxicab" is defined as a "motor vehicle." Furthermore, importantly, the provisions of the Insurance Article relevant to the present case, IN § 19-505(c)(1)(ii) and IN § 19-513(d)(1)(i), discuss exclusions and benefits **only** in the context of "motor vehicles." IN § 19-505(c)(1)(ii) provides:

> An insurer may exclude from the coverage described in this section benefits for:
>
> . . .
>
> > (ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is **occupying an uninsured motor vehicle** owned by:
> >
> > > 1. the named insured; or
> > >
> > > 2. an immediate family member of the named insured who resides in the named insured's household.

---

[16]TR § 11-165(b) provides that a "taxicab" "does not include a motor vehicle operated on regular schedules and between fixed termini with the approval of the Public Service Commission."

(Emphasis added).  And IN § 19-513(d)(1)(i) provides:

> The insurer under a policy that contains the coverages described in §§ 19-505 and 19-509 of this subtitle shall pay the benefits described in §§ 19-505 and 19-509 to an individual insured under the policy who is injured in a motor vehicle accident:
>
> > (i) **while occupying a motor vehicle for which the coverages described in §§ 19-505 and 19-509 of this subtitle are not in effect**;

(Emphasis added).  And, IN § 19-505(a)(1)(i) provides that PIP coverage shall be provided, in pertinent part, to "the first named insured . . . who is injured in any motor vehicle accident, including an accident that involves an **uninsured motor vehicle** or a **motor vehicle** the identity of which cannot be ascertained[.]"  (Emphasis added).

This definitional conundrum becomes problematic in circumstances, such as those of the instant case, wherein an individual occupying a taxicab or other non-motor vehicle seeks to avail him- or herself of the protections provided by IN §§ 19-505 and 19-513, *i.e.*, PIP coverage.  Although the definition of "motor vehicle" under IN § 19-501(b) expressly excludes taxicabs, we observe that, when that definition is applied to other provisions of the Insurance Article—namely, IN §§ 19-505 and 19-513—it produces an unreasonable and indeed illogical result.  Were we to exclude taxicabs from classification as "motor vehicles" for purposes of IN §§ 19-505 and 19-513, any passenger who is injured while riding in a taxicab and who personally carries PIP coverage through his or her own motor vehicle liability insurance policy would be unable to make a claim for PIP coverage.  This is so because, as discussed above, a taxicab is not required to obtain PIP coverage; accordingly, because PIP coverage is not in effect, IN § 19-513(d)(1) applies.  IN § 19-513(d)(1) provides:

- 32 -

> The insurer under a policy that contains [PIP and UM/UIM] coverages . . . shall pay the benefits . . . to an individual insured under the policy who is injured in a motor vehicle accident: (i) while occupying a motor vehicle for which [PIP and UM/UIM] coverages . . . are not in effect; or (ii) by a motor vehicle for which [PIP and UM/UIM] coverages . . . are not in effect as a pedestrian[.]

(Paragraph breaks omitted).

In other words, for an insured's PIP coverage to follow the insured, the insured would need to be injured in a motor vehicle accident while occupying a **motor vehicle** (not a taxicab) that does not have PIP coverage, or would need to be injured in a motor vehicle accident by being struck by a **motor vehicle** (not a taxicab) as a pedestrian. Under these circumstances, a passenger of a taxicab that did not have PIP coverage, but who had PIP coverage under his or her own motor vehicle liability insurance policy and who was involved in a motor vehicle accident, would have PIP coverage only if the passenger jumped or fell out of the taxicab and was hit, as a pedestrian, by the motor vehicle. In that case, IN § 19-513(d)(1)(ii) would apply, and PIP coverage would follow the passenger. For example, had Bundu-Conteh been a pedestrian struck by a motor vehicle, there would be no dispute as to his PIP coverage, subject to any applicable exclusions. This is, obviously, an absurd result that the General Assembly could not have intended.

Although we did not directly decide in <u>Nasseri</u> whether a taxicab was a "motor vehicle" for the purpose of IN § 19-513(d)(1), we highlighted the illogical result that would arise were we to determine that passengers of a taxicab were unable to avail themselves of PIP coverage contained in their own motor vehicle liability insurance policies simply because they were in a taxicab at the time of an accident:

Nasseri was injured in an accident involving his taxicab and a motor vehicle which was neither a taxicab nor a bus. Nasseri was certainly injured in a motor vehicle accident under the language of the statute, and [IN] § 19-505 provides PIP coverage for anyone injured in *any* motor vehicle accident.

The applicability of [IN] § 19-505, under the circumstances of this case, is reinforced by the language of [IN] § 19-513(d)(1)(i) . . . .

It would appear that the [] language [of IN § 19-513(d)(1)(i)] was directly aimed at circumstances like those presented here. The vehicles "for which [PIP and UM/UIM] coverages . . ." would legally not be "in effect" are taxicabs, buses, vehicles owned by the State of Maryland, and vehicles for which the first named insured has made "an affirmative written waiver of PIP benefits." In this case, Nasseri had an insurance policy providing PIP benefits, and he was occupying a motor vehicle for which PIP benefits were not in effect. A holding that he was not entitled to PIP benefits, precisely because he was occupying a vehicle for which PIP benefits were not in effect, could not be reconciled with [IN] § 19-513(d)(1)(i).

Nasseri, 390 Md. at 194-95, 888 A.2d at 287-88 (footnotes and brackets omitted). Plainly, such a result would run entirely counter to the remedial nature of the motor vehicle insurance statutes and the purpose of PIP coverage.

Furthermore, nothing in the legislative history of 1977 Md. Laws 2656-57 (Ch. 655, H.B. 1272), which deleted taxicabs from the definition of "motor vehicles" in what is now IN § 19-501(b)(2)(ii), indicates that the General Assembly intended to prevent taxicab passengers from availing themselves of PIP coverage contained in their own motor vehicle liability insurance policies, should they be injured in a motor vehicle accident. As we explained in Nasseri, 390 Md. at 195-96, 888 A.2d at 288, "[t]he legislative enactment which deleted taxicabs from the definition of 'motor vehicles' for purposes of certain coverages mandated by the Insurance Code . . . was not" a "sweeping" change; rather, "the purpose of Ch[apter] 655 was simply to provide that the compulsory automobile liability

insurance policies on taxicabs and certain other vehicles did not have to contain policy provisions for PIP and some other statutory coverages." Indeed, in Nasseri, id. at 196, 888 A.2d at 288, we specifically stated that House Bill 1272's "purpose was not to negate required PIP and other required coverages, under policies on all other types of motor vehicles, whenever a taxicab happened to be involved in an accident with another type of motor vehicle."

In House Bill 1272's file, in discussing the impact of House Bill 1272, the MAIF characterized the bill as a money-saving measure, which was forecasted to save the MAIF $577,465 annually. The Taxicab Association of Baltimore City also supported the measure on the ground that mandatory PIP coverage was not intended to apply to taxicabs. The General Assembly's intent was not to leave otherwise insured individuals unprotected the moment they set foot inside a taxicab. Our construction of the definition of "motor vehicle" under IN § 19-501(b) is informed by the remedial purpose of the motor vehicle insurance statutes. As we observed in Gartelman, 288 Md. at 159, 416 A.2d at 738, "Maryland's uninsured motorist statute is remedial in nature and should be liberally construed in order to promote its purpose of recovery for innocent victims of motor vehicle accidents." (Citation omitted). To exclude taxicabs from classification as "motor vehicles" for purposes of IN §§ 19-505(c)(1)(ii) and 19-513(d)(1)(i) would flout the statutes' remedial purpose.

Taking into account the language of IN § 19-501(b) and its legislative history, and to avoid an illogical and contrary result, we conclude that a taxicab is a "motor vehicle" for purposes of the owned but uninsured exclusion from PIP coverage set forth in IN § 19-

- 35 -

505(c)(1)(ii) and for the payment of benefits under IN § 19-513(d)(1)(i), *i.e.*, that the term "motor vehicle," as used in IN §§ 19-505 and 19-513, encompasses taxicabs for the purposes of PIP coverage and benefits as well as exclusion from PIP coverage. In so concluding, we do not disturb prior case law interpreting IN § 19-501 as exempting taxicabs from mandatory PIP and UM/UIM coverage, but not from mandatory liability coverage. See, e.g., Md. Auto. Ins. Fund v. Sun Cab Co., Inc., 305 Md. 807, 813, 506 A.2d 641, 644 (1986). Stated otherwise, nothing in this opinion stands for the proposition that taxicabs are now required to carry PIP coverage. We also note that our conclusion that taxicabs are "motor vehicles" for purposes of the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii) and for the payment of benefits under IN § 19-513(d)(1)(i) is wholly consistent with how the terms "taxicab" and "motor vehicle" are defined in TR §§ 11-165(a) and 11-135(a), respectively.

Applying this interpretation of the term "motor vehicle" in this case leads to the determination that Bundu-Conteh's taxicab is a "motor vehicle" for purposes of IN §§ 19-505 and 19-513.[17] Thus, under IN § 19-513(d)(1)(i), Bundu-Conteh, as an insured who has PIP coverage under his personal motor vehicle liability insurance policy with State Farm

---

[17]We observe that our conclusion that Bundu-Conteh's taxicab is a motor vehicle is consistent with the definition of "motor vehicle" contained in the no-fault PIP coverage section of Bundu-Conteh's State Farm policy. Specifically, "motor vehicle" means "a self-propelled vehicle" or "a trailer[,]" and "does not include a vehicle: 1. propelled solely by human power; 2. propelled by electric power obtained from over-head wires; 3. operated on rails or crawler treads; 4. located for use as a residence or premises; or 5. which is a lawn or garden tractor, mower or similar vehicle." (Paragraph breaks omitted). In other words, the no-fault PIP coverage section of the State Farm policy does not exclude a taxicab as a motor vehicle.

and who was injured in a motor vehicle accident[18] while occupying a motor vehicle—*i.e.*, the taxicab—for which PIP coverage was not in effect, ordinarily would be entitled to PIP coverage through State Farm, unless an exclusion precluded PIP coverage. Cf. Nasseri, 390 Md. at 196, 888 A.2d at 288-89 ("[A]n insured, who has PIP coverage under a policy on the insured's motor vehicle, and who is injured in an accident while occupying a different motor vehicle owned by someone else, is ordinarily entitled to PIP coverage under the policy on the insured's vehicle. . . . [T]he fact that Nasseri was driving a taxicab furnished no valid basis for denying him PIP benefits required by the Insurance Code." (Footnote omitted)). Accordingly, having determined that Bundu-Conteh was injured in a motor vehicle accident while occupying a motor vehicle, we turn to the exclusions authorized by IN § 19-505(c).

Relevant to this case is the owned but uninsured exclusion set forth in IN § 19-505(c)(1)(ii), which provides, in pertinent part, that the "insurer may exclude from the coverage described in this section benefits for . . . the named insured . . . for an injury that occurs while the name insured . . . is occupying an **uninsured motor vehicle** owed by . . . the named insured[.]" (Emphasis added). The phrase "uninsured motor vehicle" is not

---

[18]In its request for a hearing before the Commissioner, State Farm conceded that, because a motor vehicle rear-ended Bundu-Conteh's taxicab, Bundu-Conteh was involved in a "motor vehicle accident" as that term is defined in IN § 19-501(c)(1), which states that a "'[m]otor vehicle accident' means an occurrence involving a motor vehicle that results in damage to property or injury to a person."

defined in IN § 19-505 or in the definitional statute, IN § 19-501.[19]  Indeed, what

"uninsured motor vehicle" means for purposes of the exclusion set forth in IN § 19-

505(c)(1)(ii) appears to be a matter of first impression.  As to that, we are presented with

several alternatives: namely, that "uninsured motor vehicle" for purposes of IN § 19-

505(c)(1)(ii) could mean uninsured altogether, uninsured for PIP coverage, or not insured

under the relevant motor vehicle liability insurance policy.  We conclude that "uninsured

motor vehicle" for purposes of IN § 19-505(c)(1)(ii) means uninsured for PIP coverage,

such that a motor vehicle that is not insured for PIP coverage is an "uninsured motor

vehicle" for purposes of the owned but uninsured exclusion set forth in IN § 19-

505(c)(1)(ii).  We explain.

First, we are not persuaded that "uninsured motor vehicle" in IN § 19-505(c)(1)(ii)

simply means not insured under the relevant motor vehicle liability insurance policy.

Obviously, any motor vehicle, including a taxicab, insured under one motor vehicle

liability insurance policy would not be insured under a different motor vehicle liability

insurance policy.  Not being insured under a particular motor vehicle liability insurance

policy does not squarely answer what "uninsured motor vehicle" means in the context of

IN § 19-505(c)(1)(ii).  As explained below, this is entirely consistent with Comer and

---

[19]We recognize that "uninsured motor vehicle" is defined in IN § 19-509(a) for purposes of IN § 19-509 and UM/UIM coverage.  Importantly, however, that definition is applicable only to "uninsured motor vehicle" as used in that statute.  See IN § 19-509(a) ("In this section, 'uninsured motor vehicle' means a motor vehicle . . . .").  In other words, the definition of "uninsured motor vehicle" in IN § 19-509(a) is not applicable to, or dispositive of, "uninsured motor vehicle" as used in IN § 19-505(c)(1)(ii).

Powell, where the vehicles at issue were not insured with UM/UIM coverage under the relevant motor vehicle liability insurance policies in those cases.

We also disagree that "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii) broadly means a vehicle without any insurance at all. Specifically, the MIA contends that "uninsured motor vehicle" in IN § 19-505(c)(1)(ii) means uninsured altogether—*i.e.*, without any insurance—and argues that the General Assembly's intent in enacting the owned but uninsured exclusion was to exclude only motor vehicles totally lacking insurance. In support of its position, the MIA relies on information contained in Senate Bill 983's file, which indicates that the General Assembly was aware of this Court's holding in Gartelman and, indeed, enacted Chapter 573, which created the owned but uninsured exclusion, as a result of Gartelman.[20] Thus, the MIA asserts that the General Assembly sought to prevent only individuals operating a motor vehicle entirely without insurance, as Gartelman was, from availing themselves of the PIP coverage contained in another policy. We disagree with the MIA's interpretation of the General Assembly's intent. Here, we review the plain language of IN § 19-505(c)(1)(ii) with an eye toward the real-world outcome that the General Assembly sought to address. See Bottini, 450 Md. at

---

[20]In a reply brief, the MIA pointed out that the legislative record for Senate Bill 983 included "a marked up copy of the *Gartelman* decision[,]" as well as the following language in what "appears to be a draft of Senate Bill 983":

> IN RESPONSE TO PENN. NATIONAL MUT. CAS. INSURANCE CO. V. GARTELMAN 288 MD. 131 (1980) WHICH INTERPRETED § 539 (PIP) AND § 541 (UNINSURED) AS INVALIDATING EXCLUSIONS FOR AN INSURED OCCUPYING AN UNINSURED MOTOR VEHICLE OWNED BY A NAMED INSURED SINCE THIS CLASS WAS DEEMED TO BE COVERED.

188, 147 A.3d at 378 ("[T]he meaning of the plainest language is controlled by the context in which is appears." (Citation omitted)). Although Gartelman was operating the moped without any insurance, the outcome for the insurer in that case would have been the same had Gartelman carried liability-only insurance—*i.e.*, Pennsylvania National would have been required to pay Gartelman's UM coverage for an accident occurring while Gartelman drove a motor vehicle owned by her husband but uninsured under the Pennsylvania National policy. See Gartelman, 288 Md. at 153, 416 A.2d at 735. This is the outcome that the General Assembly sought to mitigate through the enactment of Chapter 573. We observe that, were we to adopt the MIA's broad interpretation of "uninsured," the legislative intent underpinning IN § 19-505(c)(1)(ii) would not be effectuated as the outcome would essentially be the same as in Gartelman.

Rather, we conclude that, when read in context, the plain language of "uninsured motor vehicle" in IN § 19-505(c)(1)(ii) means uninsured for PIP coverage. IN § 19-505 concerns PIP coverage only, with IN § 19-505(a) mandating PIP coverage, IN § 19-505(b) setting forth the minimum benefits required, and IN § 19-505(c) setting forth permissible exclusions from PIP coverage. IN § 19-505(c)(1)(ii), the owned but uninsured exclusion, specifically begins with the clause "[a]n insurer may exclude from the coverage described in this section benefits for[.]" The plain language of that clause relates solely to PIP coverage—*i.e.*, the coverage described in IN § 19-505. The owned but uninsured exclusion states that PIP coverage may be excluded for the named insured "for an injury that occurs while the named insured . . . is occupying an uninsured motor vehicle owned by[] the named insured[.]" IN § 19-505(c)(1)(ii). Because IN § 19-505 concerns only PIP

coverage, it is reasonable to read the plain language of "uninsured" to mean uninsured for purposes of PIP—*i.e.*, not insured for PIP coverage. Indeed, given IN § 19-505's sole focus on PIP coverage, it would not make sense for the term "uninsured motor vehicle" in IN § 19-505(c)(1)(ii) to apply to a motor vehicle that is uninsured altogether.

Our reading of "uninsured motor vehicle" in IN § 19-505(c)(1)(ii) to mean uninsured for PIP coverage is consistent with the manner in which Maryland courts have interpreted the owned but uninsured exclusion as it relates to UM/UIM coverage to mean uninsured for UM/UIM coverage under the applicable policy, and not to mean uninsured altogether. Indeed, the owned but uninsured exclusions for PIP and UM/UIM coverage closely mirror one another, and were enacted as part of the same legislation. See Chapter 573; IN §§ 19-505(c)(1)(ii), 19-509(f)(1). Thus, analogizing to the owned but uninsured exclusion for UM/UIM coverage is instructive.

As an example, in Powell, 86 Md. App. at 115, 585 A.2d at 294, the Court of Special Appeals concluded that an owned but uninsured exclusion was authorized under IN § 19-509(f)(1)'s predecessor, which was the owned but uninsured exclusion for UM/UIM coverage. Again, in that case, both vehicles were insured and had UM/UIM coverage, albeit in different amounts. See id. at 100, 585 A.2d at 286-87. In other words, neither vehicle was uninsured altogether. Mr. Powell sought coverage under the policy insuring the vehicle not involved in the accident, which had the higher UM/UIM coverage. See id. at 100, 585 A.2d at 286-87. That policy, however, had an exclusion for bodily injury to the insured that occurred while the insured occupied a motor vehicle owned by the insured or his or her spouse and that was not insured under the liability coverage of the policy. See

- 41 -

id. at 100, 585 A.2d at 287. Despite the circumstance that the vehicle involved in the accident was insured under a separate policy and thus not uninsured altogether, the Court of Special Appeals concluded that the owned but uninsured exclusion was authorized, and operated to preclude coverage under the policy at issue. See id. at 103, 115, 585 A.2d at 288, 294. In so concluding, the Court of Special Appeals specifically rejected the contention that the vehicle involved in the accident was not "uninsured"—*i.e.*, essentially an argument that, if the vehicle were considered insured, then the exclusion would not apply—explaining:

> To hold as [Mr. Powell] also urges, *i.e.*, that [Mrs. Powell]'s vehicle was not *uninsured* because it was covered under another policy, would be to permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies.

Id. at 110, 585 A.2d at 291 (emphasis in original) (footnote omitted). The same could be said concerning PIP coverage—*i.e.*, concluding that a vehicle that is insured under another policy without PIP coverage is "insured" such that the owned but uninsured exclusion is not applicable could result in permitting an insured to purchase PIP coverage under one policy for one vehicle and to not purchase PIP coverage under a second policy for a different vehicle, yet have the PIP coverage of the first policy apply to vehicles covered under the second policy.

Similarly, in Comer, 419 Md. at 97-98, 18 A.3d at 835, this Court held that an owned but uninsured exclusion in a motor vehicle liability insurance policy was authorized under IN § 19-509(f)(1) and applicable in the case, even though the vehicle involved in the

accident was insured under a separate policy, that had different UM/UIM coverage. In other words, as in Powell, the vehicle at issue in Comer was not uninsured altogether. And, in Comer, 419 Md. at 98, 18 A.3d at 835, this Court explained that one purpose of the insurance policy's exclusion and the owned but uninsured exclusion set forth in IN § 19-509(f)(1)

> is obviously to prevent a family, owning several motor vehicles, from insuring only one or two of them with an insurer, leaving the other vehicles uninsured, or underinsured under a different policy, and being able to claim [UM/UIM] benefits from the first insurer even though no premium was paid to the first insurer for coverage of the other vehicles.

Again, the same concern is present as to PIP coverage.

The MIA contends that Comer and Powell are inapplicable to the present case, as UM/UIM and PIP coverage are distinguishable. To be sure, UM/UIM coverage and PIP coverage are distinct. However, as discussed above, in the context of the owned but uninsured exclusions, the public policy considerations underpinning those decisions are equally applicable to the instant case. Indeed, to hold, as the MIA contends, that an insured who carries no-fault insurance on one vehicle can then extend that coverage to other vehicles owned by the insured but covered under liability-only coverage, such that that other vehicle is considered "insured" and not "uninsured" for purposes of IN § 19-505(c)(1)(ii), would create an unreasonable result wherein the insurer providing PIP coverage on one vehicle becomes responsible for claims made on another vehicle for which the insured has chosen not to obtain PIP coverage. Cf. Powell, 86 Md. App. at 102, 585 A.2d at 288 ("We do not believe the statute, by extending coverage to the insured when

- 43 -

involved in any accident, enlarged the class of 'insured motor vehicles' under policies of insurance.").[21]

Having concluded that "uninsured motor vehicle" for purposes of the owned but uninsured exclusion set forth in IN § 19-505(c)(1)(ii) means uninsured for PIP coverage, we consider whether Bundu-Conteh's taxicab, which was a motor vehicle as determined above, was an "uninsured motor vehicle." We conclude that Bundu-Conteh's taxicab was, in fact, an "uninsured motor vehicle" because it was uninsured for PIP coverage; indeed, it is clear from the record that Bundu-Conteh's taxicab had liability-only coverage and did not have PIP coverage. Thus, although, as discussed above, Bundu-Conteh would generally have PIP coverage through State Farm, even for injuries sustained while driving his taxicab, such PIP coverage properly may be excluded pursuant to IN § 19-505(c)(1)(ii) because Bundu-Conteh, the named insured, was injured while occupying an uninsured motor vehicle that he owned. Accordingly, we must next determine whether the third exclusion in the State Farm policy in this case is authorized by the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii). We conclude that third exclusion is authorized and applicable, and explain.

---

[21]We note that an insured who waives PIP coverage would not be able to claim that coverage under **any** policy. See IN § 19-506(b). In the context of a driver-owned taxicab, however, an insurer could find itself in a similar situation. It is undisputed that Amalgamated, the insurer of the taxicab, did not offer PIP coverage to Bundu-Conteh for the taxicab; under IN §§ 19-501(b)(2)(ii) and 19-505(a), Amalgamated was not required to offer PIP coverage for the taxicab. State Farm alleges that, as the owner of the taxicab, Bundu-Conteh was free to purchase PIP coverage for the taxicab if he so chose. The MIA does not directly assert that Bundu-Conteh was unable to purchase PIP coverage, but refers to State Farm's contention that PIP coverage could be purchased for a taxicab as a "red herring[.]"

- 44 -

The third exclusion in the no-fault coverage section of the State Farm policy provides:

Exclusions

THERE IS NO COVERAGE:

\* \* \*

3.  FOR YOU OR ANY RESIDENT RELATIVE WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE AND WHICH IS NOT INSURED UNDER THE LIABILITY COVERAGE OF THIS POLICY[.]

In other words, the provision excludes from no-fault coverage—*i.e.*, PIP coverage—any personal injury to the insured while the insured was occupying a motor vehicle owned by the insured, but not covered by liability provisions of the State Farm policy. The third exclusion is unambiguous, and clearly precludes coverage of Bundu-Conteh's PIP claim under the State Farm policy.

As to whether the exclusion is authorized by the General Assembly, we note that "[t]his Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the [General Assembly] will not be recognized." Comer, 419 Md. at 97, 18 A.3d at 834 (citations and internal quotation marks omitted). We conclude that the third exclusion in the State Farm policy is authorized by the General Assembly, and thus is valid. IN § 19-505(c)(1)(ii) provides:

An insurer may exclude from the coverage described in this section benefits for:

. . .

- 45 -

(ii) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

> 1. the named insured; or

> 2. an immediate family member of the named insured who resides in the named insured's household.

Here, Bundu-Conteh was the named insured, he was occupying a motor vehicle (the taxicab) owned by him when he was injured, and the taxicab was not insured for PIP coverage and, as such, was "uninsured" within the meaning of IN § 19-505(c)(1)(ii). What we said in Comer, 419 Md. at 98, 18 A.3d at 835, on this point rings equally true in this case—obviously, one purpose of the third exclusion in the State Farm policy and IN § 19-505(c)(1)(ii) is to prevent a named insured, who owns several motor vehicles, from insuring only one of them with an insurer, leaving the other vehicles uninsured for PIP coverage under a different policy, and then being able to claim PIP coverage and benefits from the first insurer even though no premium was paid to the first insurer for coverage of the other vehicles. Indeed, "[a]n interpretation of the Insurance Code that would allow this would be unreasonable." Comer, 419 Md. at 98, 18 A.3d at 835. Put simply, the third exclusion in the State Farm policy is authorized by IN § 19-505(c)(1)(ii) and is applicable under the circumstances of this case. Thus, State Farm properly denied Bundu-Conteh's PIP claim, as Bundu-Conteh was not entitled to PIP coverage and benefits for the injuries that he sustained while driving the taxicab.

In sum, we conclude that a taxicab is a "motor vehicle" for purposes of the owned but uninsured exclusion from PIP coverage set forth in IN § 19-505(c)(1)(ii) and for the

- 46 -

payment of benefits under IN § 19-513(d)(1)(i), and that Bundu-Conteh's taxicab is a motor vehicle for those purposes. We further determine that an "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii) means a motor vehicle uninsured for PIP coverage, such that a motor vehicle, including a taxicab, that is not insured for PIP coverage is an "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii). Applying that term to the circumstances of this case leads to the conclusion that Bundu-Conteh's taxicab, which was not insured for PIP coverage, is an "uninsured motor vehicle" for purposes of IN § 19-505(c)(1)(ii), such that an insurer may properly exclude PIP coverage under the owned but uninsured exclusion. And, we conclude that the third exclusion in the State Farm policy is a valid exclusion that is permissible under IN § 19-505(c)(1)(ii). Accordingly, we hold that the third exclusion in the State Farm policy applies in this case, and that State Farm is not responsible for PIP coverage for injuries that Bundu-Conteh sustained while driving the taxicab, which was owned by Bundu-Conteh, but not insured with State Farm. Stated otherwise, we determine that Bundu-Conteh is not entitled to PIP coverage under the State Farm policy under the circumstances of this case. As such, we affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

Circuit Court for Baltimore City
Case No. 24-C-14-000883
Argued: December 5, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2016

———————————————————————

MARYLAND INSURANCE
ADMINISTRATION

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY ET AL.

———————————————————————

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

———————————————————————

Dissenting Opinion by McDonald, J.,
which Barbera, C.J., and Greene, J., join.

———————————————————————

Filed:  January 23, 2017

Much of the Majority opinion consists of background information and detailed descriptions of cases with which I have no quarrel. My disagreement is with the Majority opinion's conclusion that a properly insured taxicab is an "uninsured" vehicle for purposes of the personal injury protection ("PIP") statute – Maryland Code, Insurance Article ("IN"), §19-505.[1] That conclusion is not only contrary to the plain language of the statute and its legislative history, but also inconsistent with our most recent decision on PIP coverage and the construction of the statute by the agency charged with administering it.

As the Majority Opinion recounts, Alhassan Bundu-Conteh entered into an insurance contract with State Farm for his personal motor vehicle under which part of the premium he paid was for PIP coverage. He also owned a car that he used for his taxicab business, which he insured with another company that insures taxicabs. Consistent with Maryland law, that insurer did not provide PIP coverage in its policy. (There is no dispute that taxicabs are excluded from the State law concerning PIP coverage – that is, automobile insurers are not required to offer PIP coverage for taxicabs – and there is no indication in the record that they do.)

As the Majority opinion indicates, it is often said that PIP coverage follows the person – *i.e.*, the insured. Majority slip op. at 15. It is thus undisputed that, if Mr. Bundu-

---

[1]The Majority opinion also devotes considerable space to explaining why a taxicab is a "vehicle" for purposes of the PIP statute despite the exclusion of taxicabs from the definition of the term "vehicle" in the statute. Majority slip op. at 28-37. While the Majority opinion must surmount that significant hurdle in order to agree with State Farm on the outcome of this case, we need not decide that question in order to decide this case correctly. *See* footnote 15 below.

Conteh were walking down the street and hit by a car, he would receive PIP benefits under the policy. If he were riding a bicycle and were involved in a motor vehicle accident, he would be covered. If he were a passenger in a taxicab when it collided with another car, he would be covered. If he were driving a taxicab owned by someone else, he would be covered.[2]

State Farm argues, and the Majority opinion apparently agrees, that PIP coverage does not follow Mr. Bundu-Conteh if he is in an accident while driving a taxicab that he owns and that he has fully insured in accordance with the requirements of State law. The Maryland Insurance Administration ("MIA"), which administers the State Insurance Law, rejected such an incongruous interpretation. So should we.

*PIP Coverage*

As the Majority opinion recounts, beginning in 1972, State law required PIP coverage as part of motor vehicle insurance to cover economic losses resulting from automobile accidents. As the Majority opinion also notes, this requirement was indisputably remedial legislation. *See* Majority slip op. at 11-12, 35. PIP coverage was part of the no-fault automobile insurance reforms that were adopted in a number of states during the 1970s and 1980s. It was intended to compensate victims of automobile accidents for economic damages more quickly and efficiently, with lower administrative costs and without regard to fault. *See generally* J.M. Anderson, P. Heaton, & S. J. Carroll, The U.S. Experience with No-Fault Automobile Insurance: A Retrospective (Rand

---

[2] *Nasseri v. GEICO*, 390 Md. 188 (2005).

Corporation 2010).

"PIP is a pure social risk-allocating mechanism. By mandating PIP, the State has made a public policy decision to provide monetary relief to nearly every victim of a motor vehicle accident occurring in Maryland. Mandatory PIP shifts the risk of caring for these victims from the State to the private sector." A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011) §9.1 at 497.

Pertinent to this case, while Maryland law requires PIP coverage on most vehicle policies, it does not require PIP coverage in policies covering taxicabs or buses. IN §19-501(b).[3] According to the record in this case, the insurer of Mr. Bundu-Conteh did not offer PIP coverage and there is no indication in the record that such coverage is available in Maryland from any insurer.

*The Statutory Authorization for an "Owned but Uninsured" Exclusion*

When an insured has PIP coverage through a policy, the insurer must pay PIP benefits whenever the insured is involved in a "motor vehicle accident" unless the law provides for an exclusion and the insured's policy includes that exclusion. IN §19-505(c).

---

[3] Taxicabs and buses were excluded from the requirement to have PIP coverage by the General Assembly in the late 1970s. Chapter 655, Laws of Maryland 1977; Chapter 819, Laws of Maryland 1978. There is some indication in the legislative history, in testimony apparently provided by proponents of the bill excluding taxicabs, that PIP coverage had not been intended for commercial enterprises such as cab companies and common carriers, and that the PIP coverage of taxicabs had proved duplicative of other coverage, such as worker's compensation insurance. *See* Bill file for House Bill 1272 (1977).

The Public Service Commission specifies insurance coverage for taxicabs for which a permit is required. Maryland Code, Public Utilities Article, §10-207. The Commission does not specify PIP coverage in its regulations. *See* COMAR 20.90.02.19, 20.90.03.17.

The exclusion at issue in this case appears in IN §19-505(c)(1)(ii)1. That provision allows an insurer to have certain exclusions from PIP coverage, including an exclusion for "an injury that occurs while the named insured … is occupying an uninsured motor vehicle owned by … the named insured…."

*What the "Owned but Uninsured" Exclusion Means*

In denying PIP coverage to Mr. Bundu-Conteh, State Farm relied on an exclusion in its policy that it traces to the authorization for an "owned but uninsured" exclusion in IN §19-505(c)(1)(ii). On its face, the statutory provision does not apply to this case. Mr. Bundu-Conteh was not occupying an "uninsured" motor vehicle. The taxicab *was insured* – indeed, it is undisputed that the vehicle had all the insurance coverage required by State law for taxicabs, although that coverage does not include PIP coverage. (Indeed, the record indicates that the insurance company that provided the policy for Mr. Bundu-Conteh's taxicab does not even offer PIP coverage). State Farm's argument that its denial of coverage is justified by this provision requires one to rewrite the statute – *i.e.*, that the exclusion extends to "an injury that occurs while the named insured … is occupying ~~an uninsured~~ a motor vehicle that, even if insured by another policy, lacks PIP coverage and that is owned by … the named insured…."

If the statute were rewritten in that manner, it would be quite at odds with the other exclusions in the statute. Other than an exclusion for a non-resident pedestrian involved in

an accident outside Maryland,[4] the other exclusions all are designed to deny benefits to a person involved in some kind of wrongdoing. In particular, the other exclusions are for (1) a person who intentionally causes the accident,[5] (2) a person operating a vehicle he knows is stolen,[6] and (3) a person committing a felony or attempting to elude the police at the time of the accident.[7] In this context, it is evident that the exclusion for an accident involving an "owned but uninsured" vehicle is meant to allow insurers to deny benefits to those who fail to comply with the compulsory automobile insurance requirement.[8]

The Majority opinion suggests that the exclusion is meant to prevent one who owns multiple automobiles from waiving PIP coverage on all but one of the vehicles and then collecting PIP benefits if the individual happened to be in an accident in one of the cars for which he had waived PIP coverage.[9] *See* Majority slip op. at 8, 21-27, 46. However, the

---

[4] IN §19-505(c)(1)(i)2. Another provision permits an insurer to exclude certain benefits, but not all PIP coverage, with respect to motorcycles, mopeds, and motor scooters. IN §19-505(c)(2).

[5] IN §19-505(c)(1)(i)1.

[6] IN §19-505(c)(1)(i)3.

[7] IN §19-505(c)(1)(i)4.

[8] *See* Maryland Code, Transportation Article, §17-104.

[9] The Majority opinion relies primarily on *GEICO v. Comer*, 419 Md. 89 (2011), by analogy for this proposition. Majority slip op. at 21-24, 42-44. The analogy does not work. In that case, Mr. Comer was injured while riding a motorcycle in an accident with an under-insured motorist. He was eligible for uninsured motorist ("UM") benefits under both the policy that covered the motorcycle, as well as a more generous policy covering his father's automobile. The UM provision of the motorcycle policy was exhausted as a result of a set-off by benefits obtained from the tortfeasor's policy and Mr. Comer therefore sought UM

statute already eliminates that possibility. As the Majority opinion notes elsewhere, under IN §19-506(b), a waiver of PIP coverage for one vehicle means that the insured forgoes PIP benefits anywhere. *See* Majority slip op. at 13-14. But that is not this case. Mr. Bundu-Conteh did not waive PIP coverage in his State Farm policy. Nor did he waive PIP coverage for his taxicab; under State law, the insurer did not offer it to him and was not required to do so.

The legislative history of the statute confirms this understanding of the statute. Authorization for an "owned but uninsured" exclusion was added to the statute by the

---

benefits under the more generous provisions of his father's policy. The insurer of the father's policy declined to provide UM benefits to Mr. Comer under an exclusion that pertained to injuries suffered while occupying a vehicle not covered by that policy. This Court held that the policy exclusion was permissible under a provision of the UM statute. The Court reasoned that the purpose of such an exclusion "is obviously to prevent a family, owning several motor vehicles, from insuring only one or two of them with an insurer, leaving the other vehicles uninsured, or underinsured under a different policy, and being able to claim uninsured or underinsured motorist benefits from the first insurer …." 419 Md. at 98.

As noted in the text above, in contrast to the UM statute, the PIP statute contains a waiver provision under which a waiver for one vehicle would waive PIP coverage for all. Thus, the circumstance imagined in the Majority opinion – obtaining PIP coverage for one vehicle, waiving it for other vehicles owned by the same person, and attempting to collect PIP benefits for accidents involving the other vehicles – would not occur.

State Farm made a similar "windfall" argument in its brief but, presumably because it does not work, abandoned it at oral argument in favor of a "windfall" scenario that might be termed "Seven Cabs for Seven Brothers." Under this scenario, several siblings would all live in the same household, would all have PIP coverage under the same vehicle owned by a parent, would all own taxicabs insured without PIP coverage, and would all have claims resulting from motor vehicle accidents involving their respective cabs. Perhaps that is possible in some universe, but it appears to be in the same realm as the monkey who pecks at a typewriter for eternity and eventually produces a complete copy of *Hamlet*.

Legislature in 1982.  Chapter 573, Laws of Maryland 1982.  That bill was evidently a response to this Court's decision in *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151 (1980), in which the claimant sought PIP benefits under her husband's automobile policy after she was injured while occupying a vehicle (a moped) that had no insurance at all.  This Court held that, in the absence of legislative authorization, an insurer could not deny PIP benefits to one who was insured under a policy including such benefits, but who was injured while operating an uninsured vehicle.[10]

The legislative file contains copies of the *Gartelman* decision; it also contains a copy of a floor report, which notes that the bill was "in response to" that decision.  As indicated above, the *Gartelman* decision involved a situation in which the injured party was operating a vehicle *without any insurance*.[11]  It is also notable that, in the synopsis of the bill that appears in the floor report, the only definition of "uninsured vehicle" in the synopsis refers to a "vehicle whose coverage is less than the coverage *required to be provided by law*." (emphasis added).

---

[10] The Court also held that a policy provision that excluded uninsured motorist ('UM") coverage for individuals like the claimant in *Gartelman* was also not authorized by the statute in that the statutory authorization only permitted exclusion of UM benefits for the *owner* of an uninsured vehicle involved in the accident and not other insured parties, such as the claimant.

[11] In its analysis of the *Gartelman* decision, the Majority opinion concludes that a construction of IN §19-505(c)(1)(ii) to refer to a vehicle without any insurance would lead to the same result in *Gartelman* as under the prior statute and therefore be contrary to legislative intent.  Majority slip op. at 40.  That conclusion is incorrect.  The vehicle occupied by the claimant in *Gartelman* lacked any insurance.

Thus, neither the plain language of IN §19-505(c)(1)(ii) nor its legislative history supports a denial of PIP coverage to an insured who also owns and operates a properly insured taxicab. As this Court has stated on numerous occasions: "Where statutory language is plain and unambiguous, and expresses a definite meaning consonant with the statute's purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning."[12] Moreover, given the remedial purpose of the statutory requirement of PIP coverage, the statute should be construed liberally to promote its purpose.[13]

Given the plain language of the statute and its legislative history, it is perhaps unsurprising that the agency charged with administering the State insurance law agrees with this interpretation. As the Majority opinion notes, the Insurance Commissioner concluded that the authorization for an "owned but uninsured" exclusion in IN §19-505(c)(1)(ii) refers to a motor vehicle without <u>any</u> insurance. Majority slip op. at 7. The MIA's construction of the statute is entitled to considerable weight. *Crofton Convalescent Center, Inc. v. DHMH*, 413 Md. 201, 215 (2010); *Maryland Aviation Administration v. Noland*, 386 Md. 556, 572 (2005)**;** *Maryland Insurance Commissioner v. Kaplan*, 434 Md. 280, 298 (2013).

---

[12] *Gartelman*, 288 Md. at 159.

[13] *See Gartelman*, 288 Md. at 159-60 (discussing remedial purpose of uninsured motorist coverage).

Moreover, an authoritative treatise on the State motor vehicle insurance law likewise agrees with this interpretation. *See* A. Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011) §9.8(A)(7) at pp. 541-44. The treatise author ties this interpretation of the exclusion to the rest of the motor vehicle insurance law:

> In many respects, the exclusion of insureds who own uninsured vehicles is a common denominator running through Maryland's comprehensive motor vehicle insurance scheme. This exclusion appears, in various forms, in Subtitle 5's regulation of PIP and uninsured motorist coverages, and in the Uninsured Division [of the Maryland Automobile Insurance Fund] sections of Subtitle 6. The purpose of the exclusion is simple. It furthers Maryland's comprehensive insurance scheme by encouraging the owner of an uninsured motor vehicle to become insured by imposing on him the penalty of exclusion form coverage for failure to obtain insurance.

*Id*. at p. 543 (quotation marks and citations omitted). After analyzing IN §19-505(c)(1)(ii) in some detail, the treatise author concludes that "uninsured should be given its ordinary meaning – a vehicle without insurance – though, arguably it also includes a vehicle insured by a policy with liability insurance that did not meet the requirements of Title 17 of the Transportation Article." *Id*. at p. 544. In the case before us, Mr. Bundu-Conteh's taxicab is not a vehicle without insurance; nor is it a vehicle whose policy does not comply with the requirements of Title 17 of the Transportation Article.

It is also notable that a related provision of the State insurance law provides that an insurer who provides a policy with PIP coverage "*shall pay [PIP] benefits . . .* to an individual insured under the policy who is injured in a motor vehicle accident . . . while occupying a motor vehicle for which [PIP] coverage[] [is] not in effect." IN §19-513(d)(1)(i) (emphasis added). This indicates that the absence of PIP coverage does not

equate to "uninsured" for purposes of IN §19-505(c)(1)(ii).[14]  This Court has opined that

this provision is directly aimed at accidents in which the insured occupies a taxicab or bus,

as taxicabs and buses are vehicles for which PIP coverage would not be in effect.  *Nasseri*

*v. GEICO*, 390 Md. 188, 194-95 (2005).  "Section 19-513(d) guarantees that persons who

have purchased PIP . . . coverage are entitled to [that] coverage, even when the vehicles

insured under their policy are not involved in the accident."  Janquitto, *supra*, §9.14(B) at

p. 586.

*Summary*

For the reasons outlined above, I would hold that a properly insured taxicab is not

an "uninsured" vehicle for purposes of the exclusion authorized by IN §19-505(c)(1)(ii).[15]

---

[14] State Farm asserts that such an interpretation contradicts the authorized exclusion for an "owned but uninsured" vehicle in IN §19-505(c)(1)(ii).  But there is only a contradiction if one adopts the extremely broad interpretation of the exclusion advanced by State Farm.  If one interprets these provisions according to their plain language, they are perfectly compatible.  A well-known canon of statutory construction prefers compatible constructions of statutory language over contradictory constructions.  *E.g., CashCall, Inc. v. Maryland Commissioner of Financial Regulation*, 448 Md. 412, 431 (2016).  The "owned but uninsured" exclusion provision (IN §19-505(c)(1)(ii)) allows exclusion of benefits when the insured occupies a vehicle that the insured owns and that carries no insurance.  By contrast, IN §19-513(d)(1)(i) makes clear that PIP benefits are to be paid when the insured is injured while occupying a vehicle without PIP coverage.  In this case, Mr. Bundu-Conteh's taxicab was properly insured; therefore, the exclusion authorized by IN §19-505(c)(1)(ii) does not apply.  But that taxicab, consistent with Maryland law, did not itself have PIP coverage and thus PIP coverage was "not in effect." IN §19-513(d)(1)(i) makes clear that, in that situation, PIP benefits are to be paid.

[15] As noted earlier, the decision reached by the Majority opinion also depends on its conclusion that a taxicab is a "vehicle" for purposes of IN §19-505(c)(1)(ii), despite the fact that taxicabs are excluded from the definition of "vehicle" in IN §19-501(b) – a definition that applies to IN §19-505(c)(1)(ii).  I see no need to reach that issue.  That is because: (1) there is no dispute in this case that Mr. Bundu-Conteh was involved in a

Accordingly, I would confirm the decision of the agency in this case.

Chief Judge Barbera and Judge Greene advise that they join this dissent.

---

"motor vehicle accident" because, as in *Nasseri*, 390 Md. at 193-94, the other car involved in the accident was not a taxicab; and (2) Mr. Bundu-Conteh's taxicab was not "uninsured" for the reasons set forth in the text.